IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| SEMICONDUCTOR ENERGY LABORATORY CO., LTD., a Japanese corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; S-LCD CORPORATION, a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware corporation,<br><br>    Defendants. | CIVIL ACTION NO. 3:09-CV-00001 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Semiconductor Energy Laboratory Co., Ltd. ("SEL"), by its attorneys, complains against defendants Samsung Electronics Co., Ltd., S-LCD Corporation, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Defendants" or "Samsung"), as follows:

**INTRODUCTION**

1. This is an action for patent infringement that accuses some of the best-selling liquid crystal display ("LCD") products being sold in the United States and Wisconsin today, including large-screen LCD TVs, LCD computer monitors, LCD laptop computers, LCD digital cameras, and LCD mobile phones. The LCD screens in each of those products are based on technology in which microscopically thin films of semiconductor and other materials are formed

sequentially to create "thin-film transistors" that individually turn on and off millions of pixels in a display. That technology helps create the sharp images and vibrant colors for which LCD screens are known. The Patents-In-Suit are directed to that technology. The accused LCD products, which are sold in Wisconsin under the brand names of Samsung and other top electronics companies, use SEL's patented technology and therefore infringe the Patents-In-Suit.

2. The patentee in this case is SEL. SEL is a Japanese company that performs significant research and development in the fields of semiconductor thin-film transistor technology, thin-film integrated circuits, liquid crystal display technology, and organic light-emitting diode displays. SEL employs over 700 people, including many scientists in the fields of semiconductor and thin-film technology and manufacturing processes. SEL's contributions in those fields have been documented by the issuance of thousands of patents, including many in the United States. The world's leading LCD manufacturers, with the notable exception of Samsung, have licenses or other agreements with SEL related to SEL's patents, and they manufacture their LCD products under those licenses or agreements.

3. The Defendants in this case are Samsung Electronics Co., Ltd. ("Samsung Electronics") and its subsidiaries and affiliated companies that are responsible for the manufacture, assembly, importation, distribution, and sales of the accused LCD products in the United States and in Wisconsin. With worldwide sales revenue of over $105 billion in 2007, Samsung is a global leader in consumer electronics sales and market share, particularly in the segments of TVs and cell phones. Samsung's success is largely attributable to its LCD business, which enjoys nearly a quarter share of the entire world's LCD market, including LCDs used in TVs, desktop monitors, and laptop computers.

4.      Until June 30, 2005, Samsung, like other leading LCD manufacturers, was licensed by SEL and manufactured and sold its LCD panels in the United States under that license. On June 30, 2005, Samsung permitted that license to lapse. Since that time, SEL and Samsung have engaged in negotiations to agree on terms for renewal of the license. Despite those efforts, the parties have failed to reach agreement. As a result, Samsung's activities constitute patent infringement.

## PARTIES

5.      Plaintiff SEL is a corporation organized under the laws of Japan with its principal place of business at 398 Hase, Atsugi-shi, Kanagawa-ken 243-0036, Japan.

6.      Defendant Samsung Electronics is a corporation organized under the laws of Korea, with its principal place of business at 250 Taepyeongno 2-ga, Jung-gu, Seoul 100-742, South Korea. On information and belief, Samsung Electronics directly and/or indirectly makes, imports, sells, and/or offers for sale infringing LCD products in Wisconsin and elsewhere in the United States.

7.      Defendant S-LCD Corporation ("S-LCD") is a corporation organized under the laws of Korea, with its principal place of business at 200 Myeongam-RI, Tangjeong-Myeon, Asan-Si, ChungCheongnam-do, 336-841, South Korea. Defendant Samsung Electronics owns a majority of the stock of defendant S-LCD and controls S-LCD. On information and belief, S-LCD directly and/or indirectly makes, imports, sells, and/or offers for sale infringing LCD products in Wisconsin and elsewhere in the United States.

8.      Defendant Samsung Electronics America, Inc. ("Samsung America") is a corporation organized under the laws of New York, with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey, 07660. On information and belief, Samsung

America is a wholly owned subsidiary of Samsung Electronics that directly and/or indirectly makes, imports, sells, and/or offers for sale infringing LCD products in Wisconsin and elsewhere in the United States.

9. Defendant Samsung Telecommunications America, LLC ("Samsung Telecommunications") is a corporation organized under the laws of Delaware with its principal place of business at 1301 E. Lookout Drive, Richardson, Texas, 75082. On information and belief, Samsung Telecommunications is a subsidiary of Samsung Electronics that directly and/or indirectly makes, imports, sells, and/or offers for sale infringing LCD products in Wisconsin and elsewhere in the United States.

## JURISDICTION AND VENUE

10. This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over each Defendant. Each Defendant, directly and/or through intermediaries or established distribution channels (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises its products in or into the United States, the State of Wisconsin, and the Western District of Wisconsin. Each Defendant has purposefully and voluntarily placed one of more of its infringing products, as described herein, into the stream of commerce with the expectation that they will be purchased by consumers within the Western District of Wisconsin. These infringing products have been and continue to be purchased by consumers within the Western District of Wisconsin. Each Defendant has committed the tort of patent infringement within the State of Wisconsin and, more particularly, within the Western District of Wisconsin.

12.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(b) because, among other reasons, this is an action for patent infringement, certain Defendants are aliens, and Defendants reside in this district.

## THE PATENTS-IN-SUIT

13.     United States Patent No. 6,900,463 ("the '463 patent"), entitled "Semiconductor Device," was duly and legally issued by the United States Patent and Trademark Office on May 31, 2005.  A true and correct copy of the '463 patent is attached hereto as Exhibit A and is incorporated herein by this reference.

14.     United States Patent No. 7,215,402 ("the '402 patent"), entitled "Electronic Device Having Liquid Crystal Display Device," was duly and legally issued by the United States Patent and Trademark Office on May 8, 2007.  A true and correct copy of the '402 patent is attached hereto as Exhibit B and is incorporated herein by this reference.

15.     United States Patent No. 7,394,516 ("the '516 patent"), entitled "Liquid Crystal Display Device Having A Particular Conductive Layer," was duly and legally issued by the United States Patent and Trademark Office on July 1, 2008.  A true and correct copy of the '516 patent is attached hereto as Exhibit C and is incorporated herein by this reference.

16.     United States Patent No. 7,413,937 ("the '937 patent"), entitled "Semiconductor Device," was duly and legally issued by the United States Patent and Trademark Office on August 19, 2008.  A true and correct copy of the '937 patent is attached hereto as Exhibit D and is incorporated herein by this reference.

17.     SEL is the owner of all right, title and interest in and to the '463, '402, '516, and '937 patents (the "Patents-In-Suit") and is entitled to sue for past and future infringement.

## BACKGROUND

**SEL Is A World Leader In The Research And Development Of Semiconductor Materials And LCD Technologies.**

18. SEL is a Japanese company that performs significant research and development in the fields of semiconductor thin-film transistor technology, thin-film integrated circuits, liquid crystal display technology, and organic light-emitting diode displays. SEL is headquartered in Atsugi-shi, Japan and employs over 700 people, including teams of scientists in the fields of semiconductors, thin-film technology, and related manufacturing processes.

19. SEL's scientists are recognized as leaders in their fields. They regularly publish scholarly pieces and frequently give presentations at scientific and industry conferences around the world. SEL and its scientists have received awards that, among others, include the Performance Award on Intellectual Property from the Japan Patent Office, an award for display products of the year from the Society for Information Display, the Grand Prize of Advanced Display (diploma of merit) in 2000, the Director Prize from the Science and Technology Agency of Japan, and the Medal with Purple Ribbon, an award bestowed by the Japanese Prime Minister's Office.

20. Many of SEL's contributions to its fields of research have been formally documented in publications and issued patents, including in the United States. Some of the world's most important technology companies have taken notice of SEL's accomplishments by providing significant capital investment to SEL in exchange for shares, including TDK Corporation, which owns about 30% of SEL.

**SEL's Research Includes TFT-LCDs, The Preferred Technology For LCD TVs, LCD Computer Monitors, And Cell Phones.**

21. One important field of research for SEL has been in the area of thin-film transistor liquid-crystal displays ("TFT-LCD"). Modern TFT-LCD screens use an active-matrix structure in which each LCD pixel is individually controlled by a thin-film transistor ("TFT"). Active-matrix TFT-LCDs offer brighter, sharper images and increased response rates over so-called passive matrix displays, which are characterized by slow response times and poor contrast. As a result, active-matrix TFT-LCDs are the technology of choice today for electronic video display products including LCD TVs, laptop computers, and cell phones.

22. The structure of a modern TFT-LCD, including those found in LCD TVs and mobile phone displays, typically consists of a backlight and two glass substrates with liquid crystal material sandwiched between them. The back substrate contains an array of thousands or millions of TFTs, which are electronic switching devices made of microscopically thin films, including semiconductor material, that turn each individual pixel in the display on or off.

23. The front substrate is fitted with color filters (each pixel has a color filter, typically using the primary colors of red, blue and green) and a polarizer. The amount of light that is permitted to pass through the polarizer and color filter on the front substrate is determined by the polarization state of that light, which in turn is determined by whether the TFT is "on" or "off." When the TFT is turned "on," the electrical charge passing through the TFT causes a rotation in the angle of the liquid crystal molecules in proximity to that TFT. Thus, light passing through a pixel with an "on" TFT and rotated liquid crystal molecules will pass through the polarizer and color filter and create a pixel of color on the screen. On the other hand, light from the backlight that passes through a pixel with an "off" TFT and non-rotated liquid crystal

molecules will be absorbed by the polarizer on the front substrate and will not form any color on the display.

24.   Thus, TFT-LCDs are remarkable because thousands or millions of TFTs work independently to control thousands or millions of pixels that together form the beautiful, bright colors and detailed images for which LCD TVs, monitors and cell phones are known.  For these reasons, among others, TFT-LCDs are the display of choice for consumers worldwide who want clear, sharp, vibrant images to watch high-definition movies and sporting events, surf the internet, and to view their cell phone displays.  Consumer acceptance of products that include TFT-LCDs is reflected by the fact that TFT-LCDs currently are the biggest selling and fastest growing display technology in the world, far outpacing, for example, sales of plasma displays or traditional cathode ray tube televisions.

**SEL's Inventions, Including Those Claimed In The Patents-In-Suit,
Improve TFT-LCDs And Result In Better Consumer Products.**

25.   SEL has been carrying out research in the field of TFT-LCDs for many years. SEL's scientists have been issued thousands of U.S. patents relating to TFT-LCDs.  SEL has contributed to the advancement of TFT-LCD technology and improvements in commercial products based on that technology, including large-screen LCD TVs, computer monitors, notebook computers, cell phones, and digital cameras.  Among other benefits conferred, SEL's research has led to longer-lasting LCD devices, improvements in display quality, the development of new methods to increase display space, and lower manufacturing costs.

26.   SEL's contributions and advancements in the field of TFT-LCD technology include the inventions described and claimed in the four Patents-In-Suit.

**Samsung Historically Has Manufactured Its
TFT-LCD Products Under A License From SEL.**

27.     Samsung is a world leader in the manufacture and sale of consumer electronic products.  In 2007, the last year for which annual figures are available, Samsung set a record with approximately $105 billion in consolidated sales worldwide and an operating profit of approximately $9.6 billion.  Samsung's 2007 business performance was driven in large part by high growth in the flat-panel TV market and a steady increase in the sale of computer monitors, laptop computers, and cell phones.  Indeed, by December 2007, Samsung held the No. 1 market share position across all TV market segments for the seventh quarter in a row and ranked first in market share for computer monitors for the fifth straight quarter, widening its lead over its competitors.  Likewise, Samsung reported record-breaking figures in sales and units sold of mobile phones, holding a global market share of 14.3%, good enough for the No. 2 ranking in the world.  Its net profit on mobile phones soared 42% over 2006 levels.

28.     Samsung's current global performance is driven in large part by the success of its LCD business.  The LCD business produces TFT-LCD panels for TVs, laptop computers, computer monitors, digital cameras, and various mobile products.  In 2007, Samsung enjoyed a 23.1% share of the worldwide LCD market.  Samsung has been ranked No. 1 in display panels for TVs, desktop monitors, and laptop computers for six consecutive years.  In 2007, Samsung's LCD business reported consolidated sales revenue of approximately $18.2 billion, which accounted for 16% of Samsung's overall sales revenue.  Samsung reported operating profits from its LCD business of $2.3 billion, which marked a 147% increase over its profits from the LCD business in 2006, and represented the industry's best profit rate.

29.     Many of the LCD products responsible for Samsung's global success use SEL's patented inventions.  Samsung previously has acknowledged that fact by taking a license from

SEL to manufacture its TFT-LCD products. In November 2000, Samsung and SEL entered into a license agreement, known as the Amorphous Silicon TFT license agreement, pursuant to which Samsung took a license from SEL that permitted Samsung to use a portfolio of SEL's patents to manufacture and sell LCD modules using amorphous silicon TFTs.

30. The importance of SEL's patented inventions to the TFT-LCD industry is also reflected by the demand for licenses from other TFT-LCD manufacturers. In addition to market-leader Samsung, other leading manufacturers of TFT-LCD products have taken licenses from SEL to use SEL's patented technology in the manufacture of their LCD products. Within the last ten years, the world's leading LCD manufacturers, including but not limited to Sharp Corporation, Toshiba Corporation, Matsushita Electric Industrial Co., Ltd., Fujitsu Limited, Hitachi Ltd., LG Display Co., Ltd., Sanyo Electric Co., Ltd., AU Optronics Corp., Quanta Display, Inc., Seiko Epson Corp., Koninklijke Philips Electronics N.V., and Chunghwa Picture Tubes Ltd. have been licensed by SEL.

**Samsung Allows Its License With SEL To Expire While Trying To Negotiate For A Renewal.**

31. The November 1, 2000 Amorphous Silicon TFT license agreement between SEL and Samsung called for expiration of the license on June 30, 2005. Prior to expiration of the agreement, SEL and Samsung began negotiations for a renewal of the Amorphous Silicon license agreement. Samsung wanted a renewed license from SEL, and SEL wanted to license Samsung on fair terms.

32. On June 30, 2005, Samsung permitted its Amorphous Silicon TFT license with SEL to expire. After expiration of the license agreement, SEL and Samsung continued to negotiate about a possible renewal of the license. Those negotiations were not successful.

**Since Expiration Of Its License, Samsung Has Been Infringing
The Patents-In-Suit.**

33. Since expiration of its SEL license, Samsung has continued to use the inventions claimed in SEL's patents and expanded production to a point of dominating the worldwide LCD market.

34. Samsung has developed its LCD market dominance through a sophisticated manufacturing, assembly, and distribution network for its products. On information and belief, the Defendants and their affiliates complement each other in the manufacture, assembly, importation, distribution, or sales of infringing Samsung products. With respect to LCD TVs, for example, Samsung Electronics and S-LCD manufacture the infringing TFT-LCD panels. Some of those panels are eventually transferred to a Mexican affiliate of Samsung Electronics for assembly into LCD TVs. On information and belief, the fully assembled TVs are then transferred to Samsung America, where they are imported into the United States and sold to consumers across the country, including in the Western District of Wisconsin.

35. With respect to LCD computer monitors and laptop computer screens, Samsung Electronics manufactures infringing TFT-LCD panels used in those products. With respect to some types of monitor panels, Samsung Electronics transfers the panels to affiliates, which assemble them into fully assembled monitors. Those affiliates eventually transfer the fully assembled products to Samsung America, which imports them into the United States and sells them across the country, including in the Western District of Wisconsin. With respect to other LCD monitor panels and laptop computer screens, Samsung Electronics transfers those products to third-party computer manufacturers, where they are incorporated into computers and sold into the United States, including the Western District of Wisconsin, typically under other brand names.

36. With respect to certain digital camera products, Samsung Electronics manufactures infringing TFT-LCD displays used in those products. Samsung Electronics then transfers those displays to an affiliate, which incorporates them into products such as digital cameras. The cameras are then sold in the United States, including in the Western District of Wisconsin.

37. With respect to certain mobile phones, Samsung Electronics manufactures the phones, including infringing TFT-LCD displays that are used in the phones. Samsung Electronics then transfers the phones to Samsung Telecommunications and/or Samsung America. The phones are imported into the United States and sold throughout the country, including in the Western District of Wisconsin. Samsung also transfers certain TFT-LCD display panels to third-party mobile phone manufacturers, who incorporate the infringing display panels into mobile phones and sell them in the United States under other brand names.

38. Thus, on information and belief, Defendants have manufactured, imported into, offered for sale and sold, directly and/or indirectly, products that infringe the Patents-In-Suit, and continue to manufacture, import into, offer for sale, and sell the infringing products in the United States, including the Western District of Wisconsin. Defendants conduct those activities directly or through established distribution channels, some involving various third parties, knowing that their activities will result in the importation, sale, offer for sale, and/or use of infringing products in Wisconsin and elsewhere in the United States. Defendants intend for the infringing products to enter the United States and Wisconsin.

39. At a minimum, Samsung Electronics and S-LCD had notice of the '463 patent in accordance with 35 U.S.C. § 287. On information and belief, all of the Defendants knew or should have known of the other Patents-In-Suit and of the fact that their products infringed the

Patents-In-Suit. To the extent any of the Defendants did not have prior notice of one or more of the Patents-In-Suit, the filing of this Complaint constitutes notice to all the defendants in accordance with 35 U.S.C. § 287.

**SEL Seeks Prompt Relief Because Samsung Is Aggressively Expanding Production And Sales Of The Infringing Products.**

40. In addition to seeking injunctive relief, SEL brings this action to recover royalties rightfully due SEL from Samsung's infringement of the Patents-In-Suit by the sale of millions of infringing LCD products in the United States. Those royalties will permit SEL to continue to fund its research and development activities in LCD and other technologies. As in the past, SEL's research and development efforts will redound to the benefit of the industry and consumers through better LCD performance characteristics and lower prices.

41. Prompt relief in this Court is essential to SEL because the market for LCD products of all types is growing and Samsung is aggressively expanding its production and sales capacities to meet that demand. Samsung expects the global LCD market to grow to more than $114 billion in 2008, an increase of approximately $24 billion over 2007. Samsung expects the growth to be fueled by increased demand for TFT-LCD modules in large-screen LCD TVs and cellular phone products.

42. To meet this demand, Samsung has announced aggressive plans to increase production. In 2005-06, Samsung and S-LCD, which Samsung Electronics controls, expanded and built additional production lines for so-called 7th Generation products, which include infringing LCD TVs and LCD computer monitors ranging in size from 19 to 46 inches. At the size of 46 inches, the 7th Generation lines can produce 1,320,000 infringing panels per month.

43. In addition, in August 2007, Samsung and S-LCD began operating an 8th Generation line, which produces infringing TFT-LCD panels for some of Samsung's most

popular products -- including 52-inch LCD TVs, a significant portion of which are ultimately sold in the United States.  The 8th Generation line can produce 660,000 infringing 52-inch panels per month.  Moreover, on November 22, 2007, the management committee of Samsung Electronics authorized an investment in a second 8th Generation production line.  The second 8th Generation line is projected to begin operations during the second quarter of 2009.  When measured by 52-inch panels, the second 8th Generation line will have an initial capacity of 360,000 infringing panels per month.

44. SEL's patented inventions are found in many of the products manufactured on these lines.  As Samsung's production and sales of infringing products grow at a breakneck pace, the injury to SEL correspondingly grows.  SEL has made real and diligent efforts to reach reasonable terms with Samsung for a renewal of Samsung's license, but the parties have failed to reach agreement on fair and reasonable terms.  Accordingly, SEL brings this action to enforce its patents.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,900,463

45. SEL repeats and realleges the allegations in paragraphs 1-44, inclusive.

46. On May 31, 2005, the United States Patent and Trademark Office issued the '463 patent, entitled "Semiconductor Device."  SEL is the owner, by means of assignment, of the '463 patent.  SEL is entitled to sue and recover damages for infringement of the '463 patent. The '463 patent is a duly and legally issued United States patent.

47. Defendants have infringed, induced infringement of, and/or contributed to the infringement of, and are continuing to infringe, induce infringement of, and/or contribute to the infringement of at least claims 1, 2, 5, 8, 9, and 12-14 of the '463 patent by making, using,

selling, offering for sale, and/or importing at least the products listed on Exhibit E to this Complaint.

48. Upon information and belief, Defendants' infringement of the '463 patent is willful. Defendants' infringement of the '463 patent has damaged and will continue to damage SEL.

49. Defendants' infringement of the '463 patent has caused and will continue to cause SEL irreparable harm unless enjoined by the Court. SEL has no adequate remedy at law. SEL's damages from the infringing activities of Defendants are not yet determined.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,215,402

50. SEL repeats and realleges the allegations in paragraphs 1-44, inclusive.

51. On May 8, 2007, the United States Patent and Trademark Office issued the '402 patent, entitled "Electronic Device Having Liquid Crystal Display Device." SEL is the owner, by means of assignment, of the '402 patent. SEL is entitled to sue and recover damages for infringement of the '402 patent. The '402 patent is a duly and legally issued United States patent.

52. Defendants have infringed, induced infringement of, and/or contributed to the infringement of, and are continuing to infringe, induce infringement of, and/or contribute to the infringement of at least claims 1, 7-8, 10, 16-17, 19, 25-26, 28, 34-35, 37, and 43-44 of the '402 patent by making, using, selling, offering for sale, and/or importing at least the products listed on Exhibit F to this Complaint.

53. Upon information and belief, Defendants' infringement of the '402 patent is willful. Defendants' infringement of the '402 patent has damaged and will continue to damage SEL.

54. Defendants' infringement of the '402 patent has caused and will continue to cause SEL irreparable harm unless enjoined by the Court. SEL has no adequate remedy at law. SEL's damages from the infringing activities of Defendants are not yet determined.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,394,516

55. SEL repeats and realleges the allegations in paragraphs 1-44, inclusive.

56. On July 1, 2008, the United States Patent and Trademark Office issued the '516 patent, entitled "Liquid Crystal Display Device Having A Particular Conductive Layer." SEL is the owner, by means of assignment, of the '516 patent. SEL is entitled to sue and recover damages for infringement of the '516 patent. The '516 patent is a duly and legally issued United States patent.

57. Defendants have infringed, induced infringement of, and/or contributed to the infringement of, and are continuing to infringe, induce infringement of, and/or contribute to the infringement of at least claims 1, 6, 11, and 16 of the '516 patent by making, using, selling, offering for sale, and/or importing at least the products listed on Exhibit G to this Complaint.

58. Upon information and belief, Defendants' infringement of the '516 patent is willful. Defendants' infringement of the '516 patent has damaged and will continue to damage SEL.

59. Defendants' infringement of the '516 patent has caused and will continue to cause SEL irreparable harm unless enjoined by the Court. SEL has no adequate remedy at law. SEL's damages from the infringing activities of Defendants are not yet determined.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,413,937

60. SEL repeats and realleges the allegations in paragraphs 1-44, inclusive.

61.     On August 19, 2008, the United States Patent and Trademark Office issued the '937 patent, entitled "Semiconductor Device." SEL is the owner, by means of assignment, of the '937 patent. SEL is entitled to sue and recover damages for infringement of the '937 patent. The '937 patent is a duly and legally issued United States patent.

62.     Defendants have infringed, induced infringement of, and/or contributed to the infringement of, and are continuing to infringe, induce infringement of, and/or contribute to the infringement of the '937 patent by making, using, selling, offering for sale, and/or importing products that are made with and/or incorporate the inventions of at least claims 8, 10, 12, 15-16, 26, 28, and 32-33 of the '937 patent, including the products listed on Exhibit H to this Complaint.

63.     Upon information and belief, Defendants' infringement of the '937 patent is willful. Defendants' infringement of the '937 patent has damaged and will continue to damage SEL.

64.     Defendants' infringement of the '937 patent has caused and will continue to cause SEL irreparable harm unless enjoined by the Court. SEL has no adequate remedy at law. SEL's damages from the infringing activities of Defendants are not yet determined.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Semiconductor Energy Laboratory Co., Ltd. respectfully requests that this Court enter judgment in its favor against Defendants and grant the following relief:

   A.   Adjudge that Defendants are infringing, inducing infringement of, and/or contributing to the infringement of the Patents-In-Suit;

   B.   Adjudge that Defendants' infringement is willful;

C. Enter an order preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with them who receive actual notice of the order by personal service or otherwise, from any further acts of infringement of the Patents-In-Suit;

D. Award SEL damages in an amount adequate to compensate SEL for Defendants' infringement of the Patents-In-Suit;

E. Enter an order trebling any and all damages awarded to SEL by reason of Defendants' willful infringement of the Patents-In-Suit, pursuant to 35 U.S.C. § 284;

F. Enter an order awarding SEL interest on damages awarded and its costs pursuant to 35 U.S.C. § 284;

G. Enter an order finding that this is an exceptional case and awarding SEL its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

H. Award SEL such other relief as the Court may deem appropriate and just under the circumstances.

## JURY DEMAND

Plaintiff Semiconductor Energy Laboratory Co., Ltd. respectfully demands trial by jury of all matters triable to a jury.

| | |
|---|---|
| Dated:  January 2, 2009 | /s/ *Anthony A. Tomaselli* |

Anthony A. Tomaselli
Kristin Graham Noel
QUARLES AND BRADY LLP
33 East Main Street
Suite 900
Madison, Wisconsin  53703
Telephone: 608 283-2615

Of Counsel:

Donald R. Harris
Terrence J. Truax
Steven R. Trybus
Jeffrey A. Koppy
Joseph A. Saltiel
John E. Titus
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL  60611-7603
Telephone: 312 222-9350

Attorneys for Plaintiff Semiconductor Energy Laboratory Co., Ltd.