# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEMICONDUCTOR ENERGY LABORATORY CO., LTD., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., S-LCD CORPORATION, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, AND SAMSUNG MOBILE DISPLAY CO., LTD., <br><br> Defendants and Counterclaim-Plaintiffs. | CIVIL ACTION NO. 3:09-CV-00001 <br><br> JUDGE: Barbara B. Crabb |

## SAMSUNG'S OPPOSITION TO SEL'S MOTION TO DISMISS AND/OR STRIKE INEQUITABLE CONDUCT ALLEGATIONS IN SAMSUNG'S AMENDED ANSWER

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARDS FOR MOTIONS TO DISMISS AND MOTIONS TO
      STRIKE.............................................................................................................. 3

      A.    The Motions Test Only The Sufficiency Of The Allegations Of
            Inequitable Conduct, And All Inferences Must Be Drawn In Samsung's
            Favor. ..................................................................................................... 3

      B.    Samsung Need Only Plead Particular Facts From Which A Court May
            Infer That An Individual Knew Of The False Or Withheld Information
            And Acted With Specific Intent.................................................................. 4

      C.    SEL Misreads *Exergen*'s Intent Requirement.......................................... 5

III.  SAMSUNG HAS PLEADED INEQUITABLE CONDUCT WITH
      PARTICULARITY................................................................................................ 6

      A.    Samsung Has Properly Alleged Inequitable Conduct With Respect To The
            '463 Patent. ............................................................................................. 6

            1.    Samsung Has Properly Alleged That SEL Failed To Disclose *SEL I*
                  And *SEL II* To The PTO. .................................................................. 6

                  a.    The law of the Federal Circuit is clear:  inequitable conduct
                        can be based on references that were submitted to the PTO.......... 7

                  b.    Samsung has properly alleged inequitable conduct
                        regardless of any presumption that the examiner did his job
                        correctly. ................................................................................. 11

                  c.    *SEL I* and *SEL II* are material to the '463 Patent. ........................ 12

                  d.    Samsung alleges facts sufficient to reasonably infer Dr.
                        Yamazaki intentionally concealed *SEL I* and *SEL II*. .................. 14

            2.    Samsung Has Properly Alleged That SEL Intentionally And
                  Deceptively Withheld The '974 Patent.................................................... 16

            3.    Samsung Has Properly Alleged That SEL Made Affirmative
                  Misrepresentations Of Material Fact To The PTO. ................................ 18

            4.    Samsung Has Properly Alleged That The '463 Patent Is
                  Unenforceable Under the Doctrine of Infectious Unenforceability........ 20

      B.    Samsung Has Properly Alleged Inequitable Conduct With Regard To The
            '402 Patent. ............................................................................................. 24

      C.    Samsung Has Properly Alleged Inequitable Conduct With Respect To The
            '516 Patent. ............................................................................................. 25

            1.    Samsung Has Identified The Specific Individuals Who Withheld
                  The JP'811 Reference. ......................................................................... 27

# TABLE OF CONTENTS
(continued)

Page

2.   Samsung Alleges Facts Sufficient To Reasonably Infer Knowledge Of, And An Intent To Withhold, The JP'811 Reference. ........................ 27

3.   Samsung Alleges That The JP'811 Reference Is Non-Cumulative. ........ 31

D.   Samsung Has Properly Alleged Inequitable Conduct With Regard To The '937 Patent. ................................................................................................ 32

1.   Samsung Has Sufficiently Pleaded That The Unenforceability Of The '542 Patent Applies To The '937 Patent. .......................................... 32

a.   Samsung has sufficiently pleaded SEL's inequitable conduct in procuring the '542 Patent. ........................................... 32

b.   Samsung's allegations establish an "immediate and necessary" relationship between the '542 Patent and the '937 Patent. .......................................................................................... 34

2.   Samsung Has Properly Alleged That SEL Deceptively Withheld The JP'745 Reference. .......................................................................... 35

a.   Samsung has identified Dr. Yamazaki as the specific individual who withheld the JP'745 reference. ........................... 36

b.   Samsung has alleged that the JP'745 reference is non-cumulative. ................................................................................... 36

c.   Samsung has alleged facts sufficient to reasonably infer SEL's knowledge of, and intent to withhold, the JP'745 reference. .............................................................................. 37

3.   Samsung Has Adequately Alleged That SEL Withheld The '826 Patent. .................................................................................................... 38

a.   Samsung has identified Dr. Yamazaki as the specific individual who withheld the '826 Patent. .................................... 39

b.   Samsung has alleged that the '826 Patent is non-cumulative. ................................................................................... 39

c.   Samsung has alleged facts sufficient to reasonably infer SEL's knowledge of, and intent to withhold, the '826 Patent. ................................................................................... 39

IV.   IF THE COURT FINDS SAMSUNG'S ALLEGATIONS DEFICIENT, LEAVE TO AMEND SHOULD BE GRANTED. ...................................................... 41

V.   CONCLUSION ......................................................................................... 42

# TABLE OF AUTHORITIES

**Page**

## Cases

*3Com Corp. v. D-Link Sys.,*
    2007 U.S. Dist. LEXIS 26540 (N.D. Cal. Mar. 27, 2007)....................................... 20

*Agfa Corp. v. Creo Prods.,*
    451 F.3d 1366 (Fed. Cir. 2006) ........................................................................ 18, 40

*Alioto v. Marshall Field's & Co.,*
    77 F.3d 934 (7th Cir. Wis. 1996) ............................................................................ 31

*Andren & Assocs. v. Iris Graphics,*
    1996 U.S. Dist. LEXIS 16954 (N.D. Ill. Nov. 8, 1996) ......................................... 41

*Bower v. Jones,*
    978 F.2d 1004 (7th Cir. 1992) ................................................................................. 42

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,*
    326 F.3d 1226 (Fed. Cir. 2003) ......................................................................... 29, 31

*Cler v. Ill. Educ. Ass'n,*
    423 F.3d 726 (7th Cir. 2005) .................................................................................... 3

*Cognex Corp. v. VCode Holdings, Inc.,*
    2008 U.S. Dist. LEXIS 40370 (D. Minn. May 19, 2008)........................................ 22

*Cordis, Corp. v. Medtronic AVE, Inc.,*
    194 F. Supp. 2d 323 (D. Del. 2002)........................................................................... 8

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
    120 F.3d 1253 (Fed. Cir. 1997) ......................................................................... 34, 37

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ............................................. 4, 5, 11, 14, 16, 17, 33, 37, 39, 40

*Ferring B.V. v. Barr Labs., Inc.,*
    437 F.3d 1181 (Fed. Cir. 2006) ........................................................................ 4, 34, 37

*First Years v. Munchkin, Inc.,*
    575 F. Supp. 2d 1002 (W.D. Wis. 2008) ............................................................... 15

First Years, Inc. v. Munchkin, Inc.,
    2008 WL 4682553 (W.D. Wis. Feb. 5, 2008) ................................. 3, 4, 11, 15, 19, 28

*Fiskars, Inc. v. Hunt Mfg. Co.,*
    221 F.3d 1318 (Fed. Cir. 2000) ............................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Foman v. Davis*,
371 U.S. 178 (1962)................................................................................................ 41

*Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.*,
837 F. Supp. 1444 (N.D. Ind. 1992) ........................................................................ 7

*J.P. Stevens & Co. v. Lex Tex, Ltd.*,
747 F.2d 1553 (Fed. Cir. 1984) ............................................................................. 31

*Keystone Driller Co. v. General Excavator Co.*,
290 U.S. 240 (1933).......................................................................................... 20, 21

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
487 F.3d 897 (Fed. Cir. 2007) .................................................................... 13, 29, 31

*MercExchange, L.L.C. v. eBay, Inc.*,
271 F. Supp. 2d 784 (E.D. Va. 2002) .................................................................... 41

*Molins v. Textron*,
48 F.3d 1172 (Fed. Cir. 1995) .......................................................... 10, 15, 33, 37

*Moranski v. General Motors Corp.*,
433 F.3d 537 (7th Cir. 2005) .................................................................................. 3

*Multimedia Patent Trust v. Microsoft Corp.*,
525 F. Supp. 2d 1200 (S.D. Cal. 2007)................................................................... 4

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
422 F. Supp. 2d 934 (N.D. Ill. 2006) .................................................................... 20

*Nilssen v. Osram Sylvania*, Inc.
504 F.3d 1223 (Fed. Cir. 2007) ............................................................................. 13

*Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*,
359 F. Supp. 948 (S.D. Fla. 1972) .......................................................................... 7

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008) ....................................................................... 34, 37

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*,
324 U.S. 806 (1945).................................................................................... 4, 21, 22

*Raychem Corp., v. PSI Telecommunications, Inc.*,
1995 WL 108193 (N.D. Cal. Mar. 6, 1995)............................................................ 3

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Redfield v. Continental Casualty Corp.*,
818 F.2d 596 (7th Cir. Ill. 1987) ........................................................ 41

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*,
73 F. Supp. 2d 537 (M.D. N.C. 1999) .................................................. 41

*Ricoh Co., Ltd. v. Nashua Corp.*,
947 F. Supp. 21, 25 (D.N.H. 1996) ...................................................... 42

*Rohm & Haas Co. v. Crystal Chem. Co*,
722 F.2d 1556 (Fed. Cir. 1983) ......................................................... 9, 22

*Rolls-Royce Ltd. v. GTE Valeron Corp.*,
800 F.2d 1101 (Fed. Cir. 1986) .............................................................. 4

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
24 F. Supp. 2d 537 (E.D. Va. 1998) ............................................. 9, 22, 35

*Semiconductor Energy Lab. v. Samsung Elec. Co., Ltd.*,
4 F. Supp. 2d 477 (E.D. Va. 1998) ..................................................... 1, 40

*Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*,
204 F.3d 1368 (Fed. Cir. 2000) ............................... 1, 3, 7, 8, 30, 33, 37

*Silicon Graphics, Inc. v. ATI Techs. ULC*,
2007 U.S. Dist. LEXIS 19401 (W.D. Wis. Mar. 15, 2007) ................... 4, 5

*Sports Ctr., Inc. v. Brunswick Marine*,
63 F.3d 649 (7th Cir. 1995) .................................................................. 42

## Statutes

Federal Rule of Civil Procedure 12(f) ...................................................... 3

Federal Rule of Civil Procedure 15(a) .................................................... 42

Federal Rule of Civil Procedure 9(b) ....................................................... 4

## Other Authorities

Manual of Patent Examination Procedure § 2001.06 ...................... 10, 13, 14

Manual of Patent Examination Procedure § 2004 ...................................... 19

## I.   __INTRODUCTION__

Few lawsuits present as compelling a case of inequitable conduct as this one.  The patents-in-suit are the direct result of SEL's consistent, willful effort to deceive the PTO, as fully documented in Samsung's First Amended Answer, Defense, And Counterclaims To Plaintiff's First Amended Complaint ("Answer").

SEL is no stranger to allegations of inequitable conduct.  In prior litigation involving similar subject matter, similar patents, and identical parties, SEL and Dr. Yamazaki were held— through clear and convincing evidence—to have engaged in a "sophisticated, subtle, and consistent effort to hide the ball from the PTO in a manner plainly at odds with an applicant's duty of candor, good faith, and honesty."  *Semiconductor Energy Lab. v. Samsung Elec. Co., Ltd.*, 4 F. Supp. 2d 477, 496 (E.D. Va. 1998) ("*SEL I*"), *recon. den'd*, 24 F. Supp. 2d 537 (E.D. Va. 1998), *aff'd* 204 F.3d 1368 (Fed. Cir. 2000) ("*SEL II*").  SEL's misconduct was not limited to *SEL I*; SEL repeated the same pattern of behavior in its prosecution of the patents-in-suit.

A particularly egregious example illustrates the immediate relationship between SEL's previous misconduct and this case.  During the prosecution of the '463 Patent, and at approximately the same time that Samsung raised its inequitable conduct defense in *SEL I*, SEL withdrew all of the '463 Patent's claims then pending before the PTO and replaced them with a set of claims remarkably similar to those of the patent ultimately found unenforceable in *SEL I*.  SEL's motivation was transparent—it wanted to recapture these same claims within a different patent family in order to cleanse the claims of the previous inequitable conduct.  But rather than make a full and complete disclosure to the PTO, SEL systematically concealed from the patent examiner both the prior litigation with Samsung and the finding of unenforceability. The doctrine of "infectious unenforceability" specifically applies to this situation in which the taint of one patent infects and renders unenforceable a second patent.

1

But this is not all that Samsung alleges. SEL's further abuse of the patent system includes an assortment of other affirmative misconduct, including knowingly withholding numerous material prior art references, submitting misleading partial translations of foreign language prior art references, and making false assertions of fact in the patent specification. These facts are alleged with particularity in the Answer.

SEL has now filed a Motion To Dismiss And/Or Strike Inequitable Conduct Allegations In Samsung's Amended Answer ("Motion"), seeking to knock out Samsung's allegations of inequitable conduct and preempt discovery on these issues. SEL's arguments, however, fall flat. As a threshold matter, many of SEL's arguments are premised on misinterpretations and misapplications of relevant law. SEL asserts, for example, that in order to plead inequitable conduct, "the inference of deceptive intent from [the alleged] facts 'must be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'" Mot. at 4. However, as discussed below, the clear-and-convincing standard applies only to a final adjudication of the merits after discovery; it does not apply at the pleading stage. Discovery is still at an early stage and, at the filing of SEL's motion, the parties had yet to take a single deposition. Samsung need not prove its defenses before it can plead them. At this stage, Samsung need only plead facts that would allow this Court to "reasonably infer" SEL's deceptive intent.

In addition, SEL bases several arguments on the mistaken assertion that as long as prior art references have somehow been presented to the PTO, they cannot form the basis of inequitable conduct. Yet the Federal Circuit rejected precisely this argument in the parties' prior litigation, finding inequitable conduct where SEL had "constructively withheld" a Japanese prior

art reference even though it was before the PTO. *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1377 (Fed. Cir. 2000).

As discussed below, Samsung's Answer is more than sufficient in alleging the "who, what, when, where, why, and how" of SEL's inequitable conduct before the PTO. Samsung's allegations also suffice for this Court to reasonably infer SEL's deceptive intent. Accordingly, SEL's motion should be denied. To the extent this Court finds deficiencies in Samsung's allegations, Samsung respectfully requests leave to amend those allegations.[1]

## II.   LEGAL STANDARDS FOR MOTIONS TO DISMISS AND MOTIONS TO STRIKE

### A.   The Motions Test Only The Sufficiency Of The Allegations Of Inequitable Conduct, And All Inferences Must Be Drawn In Samsung's Favor.

A motion to dismiss does not test the merits of a complaint, but rather the sufficiency of its allegations. *First Years, Inc. v. Munchkin, Inc*., 2008 WL 4682553, at *2 (W.D. Wis. Feb. 5, 2008) (Crabb, J.). When reviewing a motion to dismiss, a court must view the claim in the light most favorable to the party bringing the claim, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in favor of the non-moving party. *First Years*, 2008 WL 4682553, at *2 (citing *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005)).

Federal Rule of Civil Procedure 12(f) permits the court to strike "any insufficient defense." Motions to strike, however, are a drastic remedy and are generally disfavored. *Raychem Corp., v. PSI Telecommunications, Inc.*, 1995 WL 108193, at *1 (N.D. Cal. Mar. 6, 1995) ("motions to strike are often looked upon with disfavor because they are a drastic remedy that may often be used for dilatory purposes"; denying plaintiff's motion to strike defendant's

---

[1] This motion is supported by the accompanying Declaration of Brian M. Berliner in Support of Samsung's Opposition To SEL's Motion To Dismiss And/Or Strike Inequitable Conduct Allegations In Samsung's Amended Answer ("Berliner Decl.").

inequitable conduct defenses).  In deciding a motion to strike, a district court must view the

pleadings in the light most favorable to the pleader.  *Multimedia Patent Trust v. Microsoft Corp.*,

525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) (denying plaintiff's motion to strike defendant's

inequitable conduct defenses).

### B.      Samsung Need Only Plead Particular Facts From Which A Court May Infer That An Individual Knew Of The False Or Withheld Information And Acted With Specific Intent.

Applicants for patents are required to prosecute patent applications in the PTO with

candor, good faith, and honesty.  *See Precision Instrument Mfg. Co. v. Automotive Maintenance

Mach. Co.*, 324 U.S. 806, 818 (1945).  A breach of this duty constitutes inequitable conduct.

*Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006).

Inequitable conduct, while a broader concept than fraud, must be pled with particularity

under Federal Rule of Civil Procedure 9(b).  *Silicon Graphics, Inc. v. ATI Techs. ULC*, 2007 U.S.

Dist. LEXIS 19401, at *7-8 (W.D. Wis. Mar. 15, 2007) (Crabb, J.).  To plead inequitable

conduct with sufficient particularity, a party must identify "the specific who, what, when, where,

and how of the material misrepresentation or omission committed before the PTO."  *Exergen

Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *First Years*, 2008 WL

4682553, at *2.  In addition, a pleading of inequitable conduct must include "sufficient

allegations of underlying facts from which a court may reasonably infer that a specific individual

(1) knew of the withheld material information or of the falsity of the material misrepresentation,

and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."

*Exergen*, 575 F.3d at 1329.  The drawing of inferences with respect to the question of intent is

within the province of the fact finder.  *See Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d

1101, 1110, 231 USPQ 185, 192 (Fed. Cir. 1986).  In considering a motion to dismiss claims of

inequitable conduct, the court must draw all reasonable inferences in favor of the pleading party. *Silicon Graphics*, 2007 U.S. Dist. LEXIS 19401, at *6.

### C.     **SEL Misreads *Exergen*'s Intent Requirement.**

SEL's motion is premised on a plain misreading of *Exergen*'s pleading requirements. According to SEL, "[e]ven where facts are pled, the inference of deceptive intent from those facts 'must be the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard.'"  Mot. at 4 (citing *Exergen*, 575 F.3d at 1329) (emphasis original).  This standard, as the Federal Circuit expressly held in *Exergen*, is ***not*** the standard that applies at the pleading stage.  Rather, to survive under Rules 9(b) and 12(b) of the Federal Rules, a pleading of inequitable conduct need only include "sufficient allegations of underlying facts from which a court ***may reasonably infer*** that a specific individual . . . withheld or misrepresented this information with a specific intent to deceive the PTO."  *Exergen*, 575 F.3d at 1329 (emphasis added).  In a footnote, the Federal Circuit explains the "reasonable inference" standard and draws a sharp distinction between that standard and the subsequent burden of proving inequitable conduct on the merits:

> A reasonable inference is one that is ***plausible*** and that ***flows logically from the facts alleged***, including any objective indications of candor and good faith. . . .  In contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence. . . .  Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be "the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard."

*Id*. at 1366 (citations omitted) (emphasis added).  In short, SEL improperly conflates the "clear and convincing" standard required to prove a claim on the merits with the significantly lower standard required at the pleading stage.  When viewed under the proper standard, Samsung's

allegations of inequitable conduct are more than sufficient for the Court to *reasonably infer* that

Shunpei Yamazaki withheld or misrepresented material information with a specific intent to

deceive the PTO.

## III.   SAMSUNG HAS PLEADED INEQUITABLE CONDUCT WITH PARTICULARITY.

### A.   Samsung Has Properly Alleged Inequitable Conduct With Respect To The '463 Patent.

#### 1.   Samsung Has Properly Alleged That SEL Failed To Disclose *SEL I* And *SEL II* To The PTO.

Samsung sufficiently alleges the circumstances surrounding SEL's failure to disclose the

parties' prior litigation to the PTO.  Samsung's relevant allegations are summarized below.

> **Who/What:** Samsung alleges that during the prosecution of
> the '463 Patent, SEL, through Shunpei Yamazaki and its patent
> attorneys, failed to properly inform the PTO of the existence of,
> and material information arising from, prior litigation between
> SEL and Samsung involving the '636 Patent: *SEL I* and *SEL II*.
> Answer ¶¶ 89-96.

> **Why/How:** Samsung also alleges that the '636 Patent at issue in
> *SEL I* and *SEL II* is closely related to the '463 Patent because SEL
> sought to recapture the subject matter of the '636 Patent in the '463
> Patent.  Answer ¶¶ 98, 148.  As a result, the claims of the '636
> Patent are substantially similar to those of the '463 Patent.  Answer
> ¶ 97.  Indeed, each limitation of Claims 1, 2, 8, 9, 12, and 14 of
> the '463 Patent is mirrored by a similar limitation in any of Claims
> 4, 5, and 7 of the '636 Patent.  Answer ¶¶ 97-98.  Because of this
> substantial similarity, the existence of *SEL I* and *SEL II* is material
> to the '463 Patent.  Answer ¶¶ 98-99.  Further, because of the
> patents' substantial similarity, information arising from *SEL I* and
> *SEL II* that pertains to the unenforceability or invalidity of the '636
> Patent is also material to the '463 Patent.  Answer ¶ 100.

> **Knowledge/Intent:** Samsung further alleges that during the '463
> Patent prosecution, Dr. Yamazaki was aware of *SEL I*, *SEL II*, and
> material information arising from those cases and intentionally
> concealed this information from the PTO.  Answer ¶ 105.  SEL
> never filed a Notice of Litigation or an Information Disclosure
> Statement ("IDS") for the purpose of disclosing those cases.
> Answer ¶ 106.  Instead, SEL buried the *SEL I* and *SEL II* opinions

6

> in an IDS and Notice of Litigation meant to disclose a different
> litigation between SEL and Acer ("the *Acer* litigation").  *Id.*  As
> Samsung alleges, Yamazaki's failure to properly disclose *SEL I*
> and *SEL II* shows a clear intention by Dr. Yamazaki to deceive the
> PTO.  Answer ¶ 107.  SEL's intent to deceive is further
> demonstrated by the contrasting manner in which it brought the
> *Acer* litigation to the attention of the PTO.  Answer ¶ 108.

These allegations set out in substantial detail the circumstances of SEL's inequitable

conduct and allow for a reasonable inference that Dr. Yamazaki both knew of the materiality of

*SEL I* and *SEL II* and intentionally misdirected the PTO as to their relevance, thus constructively

withholding those references.

### a.  The law of the Federal Circuit is clear:  inequitable conduct can be based on references that were submitted to the PTO.

SEL's primary attack on these allegations is that Samsung has not sufficiently alleged

"what" SEL did to deceive the PTO.  Mot. 6-8.  SEL asserts that, as a matter of law, a reference

before the PTO cannot form the basis of inequitable conduct, and that SEL's "burying" of the

*SEL I* and *SEL II* opinions therefore cannot constitute inequitable conduct.  Mot. at 6.  SEL's

assertion ignores the relevant case law.

Contrary to SEL's assertion, courts including the Federal Circuit routinely base findings

of inequitable conduct on references before the PTO.  *See, e.g.*, *SEL II*, 204 F.3d at 1377; *Penn*

*Yan Boats, Inc. v. Sea Lark Boats, Inc*., 359 F. Supp. 948, 964-65 (S.D. Fla. 1972), *aff'd,* 479

F.2d 1338 (5th Cir. 1973), *cert. denied,* 414 U.S. 874 (1974) (finding inequitable conduct where

the patentee acted to "bury the [material reference] in a long list of allegedly old prior art

patents"); *Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.*, 837 F. Supp. 1444,

1477 (N.D. Ind. 1992), *aff'd w'out op.*, 11 F.3d 1072 (Fed. Cir. 1993), cert. denied, 511 U.S.

1128 (1994) ("it is a violation of the duty of candor and fair dealing with the Patent Office for an

applicant or its attorney to disclose a pertinent prior art patent reference to the examiner in such a

way as to 'bury' it or its disclosures in a series of disclosures of less relevant prior art references, so that the examiner would be likely to ignore the entire list and permit the application to issue"); *Cordis, Corp. v. Medtronic AVE, Inc.*, 194 F. Supp. 2d 323, 368 (D. Del. 2002) *rev'd on other grounds*, 339 F.3d 1352 (Fed. Cir. 2003).

The Federal Circuit's holding in *SEL II*—noticeably absent from SEL's Motion—is instructive.  In *SEL II*, the Federal Circuit held that SEL had engaged in inequitable conduct by withholding a Japanese reference ***even though the reference was submitted to the PTO***.  204 F.3d at 1377-78.  There, SEL submitted to the examiner an untranslated Japanese prior art reference ("the Canon reference") together with an English summary and partial translation of the reference.  *Id*. at 1377.  SEL argued (as it does here) that "because it submitted the entire untranslated reference to the PTO, it [could not] be deemed to have withheld the reference from the examiner."  *Id*.  The Federal Circuit disagreed.  Although SEL had technically complied with the rules regarding foreign language submissions, the Federal Circuit found that SEL nevertheless violated its duty of candor to the PTO by providing a partial translation and summary intended to "misdirect the examiner's attention from the reference's relevant teaching." *Id*.  By focusing the examiner's attention on less material portions of the reference, "SEL deliberately deceived the examiner into thinking that the [Japanese] reference was less relevant than it really was, and *constructively withheld* the reference from the PTO."  *Id*. (emphasis added).  Accordingly, as SEL is well-aware, even where a reference is before the PTO, inequitable conduct can be found.

Here, Samsung does not dispute that the *SEL I* and *SEL II* opinions were before the examiner.  Nevertheless, SEL unquestionably violated its duty of candor to the PTO by failing to disclose the *Samsung* litigation to the PTO.  During the prosecution of the '463 Patent, and at

approximately the same time that Samsung raised its inequitable conduct defense in *SEL I*, SEL withdrew all of the '463 Patent's pending claims and replaced them with a set of claims similar to those of the patent ultimately found unenforceable in *SEL I*.  Answer ¶ 98.  While prosecuting the '463 Patent, SEL never filed a Notice of Litigation disclosing the *Samsung* litigation and its findings of unenforceability to the PTO.  Answer ¶ 106.  Instead, SEL concealed the *Samsung* litigation from the PTO and eventually convinced the examiner to issue the new claims, thus recapturing the subject matter of the unenforceable patent.

SEL now contends that because it later filed a Notice of Litigation identifying subsequent litigation with Acer Inc. during the '463 Patent application, which included the *SEL I* and *SEL II* opinions, SEL is absolved of its concealment of the *Samsung* litigation.  Mot. at 6-8.  To the contrary, because the subject matter of the '463 Patent was tainted by the inequitable conduct of the '636 Patent, SEL had a heightened duty to disclose the *Samsung* litigation to the PTO. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 24 F. Supp. 2d 537, 545-46 (E.D. Va. 1998) (citing *Rohm & Haas Co. v. Crystal Chem. Co*, 722 F.2d 1556 (Fed. Cir. 1983)) (finding inequitable conduct in a prior patent must be properly cured through full disclosure or it will "continue to infect the process; cure cannot be achieved through manipulation of patent prosecution procedures, such as canceling or amending claims or filing continuation and divisional applications."); *see also* MPEP § 2001.06(c) (stating the patent applicant's duty to disclose litigation relating to the subject matter of a patent application).  SEL's purported disclosure of the *SEL I* and *SEL II* opinions falls far short of this heightened duty.  The *SEL I* and *SEL II* opinions were buried in the lengthy *Acer* Notice of Litigation and IDS.  Answer ¶ 106; *see also* Berliner Decl. Ex. 1 [*Acer* Notice of Litigation and IDS].  SEL did nothing to specifically bring these opinions to the attention of the examiner.  *Id*.  In addition, the two

opinions—concealed within a ten-page listing of over one hundred references amounting to over 3000 pages of material—were submitted as exhibits to declarations in support of summary judgment motions filed in the *Acer* litigation.  Answer ¶ 107.  This manner of "disclosure," coupled with SEL's failure to file a Notice of Litigation disclosing the *Samsung* litigation, clearly breached SEL's duty of candor to the PTO and shows an unmistakenly clear intention to withhold the *Samsung* litigation and its findings from the PTO.  *Id.*

SEL relies upon *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000), in support of its contention that burying a reference cannot form the basis for inequitable conduct.  Mot. at 5.  Yet SEL reads *Fiskars*—which does not even address burying—far too broadly.  In *Fiskars*, the defendant did not allege that the patentee had deceptively buried a material reference submitted to the PTO.  *Id.* at 1327.  Rather, the defendant argued that, when the examiner decided (on his own accord) not to consider the reference, the patentee had an obligation to again "stress to the examiner the relevance of the [reference]."  *Id.*  Under those facts, the Federal Circuit stated that "[a]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner . . . .  An applicant is not required to tell the PTO twice about the same prior art, on pain of loss of the patent for inequitable conduct."  *Id.*  *Fiskars* does not support the conclusion urged by SEL that inequitable conduct cannot be found when the reference was before the examiner.

To the contrary, where the manner of submission is deceptive, as in *SEL II* and the other cases cited by Samsung, inequitable conduct can be found even though the reference was before the examiner.  *See also Molins v. Textron*, 48 F.3d 1172, 1183-84 (Fed. Cir. 1995) (distinguishing the situation where "the reference was characterized in such a way as to mislead the PTO" from the situation where the reference is properly submitted in an IDS; also stating that

"burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith"). SEL's argument that "burying" cannot form the basis of inequitable conduct fails as a matter of law.

>   **b.   Samsung has properly alleged inequitable conduct regardless of any presumption that the examiner did his job correctly.**

Failing to undermine Samsung's allegations as a matter of law, SEL next attacks Samsung's pleadings based on the fact that the *SEL I* and *SEL II* opinions are listed on the face of the '463 Patent. According to SEL, because the examiner is presumed to have done his job correctly, this means, as a factual matter, that he must have considered the *SEL I* and *SEL II* opinions and that Samsung's allegation of intentional concealment must therefore be untenable. Mot. at 7-8.

SEL's argument fails for at least two reasons. First, as noted above, there is no requirement at the pleading stage for Samsung to make a full evidentiary showing, to rebut presumptions, or to prove that SEL successfully deceived the PTO. Rather, Samsung need only allege facts that identify the circumstances of SEL's inequitable conduct. *Exergen*, 575 F.3d at 1327. SEL's invitation to the Court to weigh the still undeveloped facts and choose among competing inferences is improper and must be rejected. *First Years*, 2008 WL 4682553, at *2.

Second, in *SEL I* and *SEL II*, both the district court and the Federal Circuit rejected the very argument that SEL is making here—and did so in rendering and affirming a final judgment on the merits, where the required showing of inequitable conduct is far more exacting than at the pleading stage. In *SEL I* and *SEL II*, because the full, untranslated Canon reference was before the PTO, SEL argued that the examiner must have read and understood the reference's teachings and, consequently, SEL could not have withheld the reference from the examiner. *Id.* at 1377. The Court disagreed, recognizing the practical realities of the patent prosecution process:

> SEL's contention that the examiner must have both read and fully
> understood the entire untranslated Canon reference based on his
> having read the misleadingly incomplete one-page translation and
> concise statement is absurd.  Though the examiner is indeed
> presumed to have done his job correctly, there is no support in the
> law for a presumption that the examiner will understand foreign
> languages such as Japanese or will request a costly complete
> translation of every submitted foreign language document,
> particularly in the absence of any reason to do so.  *Id.*

In this case, SEL's contention that, at the pleading stage, the examiner must be presumed

to have read and fully understood the relevance of the buried *SEL I* and *SEL II* opinions is

equally misguided—if not more so.  The examiner cannot be presumed to have understood the

full import of those opinions when they were submitted as exhibits to an unrelated summary

judgment motion and buried in a 3000-page Notice of Litigation and IDS that purported to

disclose a different litigation altogether.  Even if the examiner had found and read the opinions, it

is unrealistic to presume that the examiner would have appreciated, without SEL's candid

guidance, that *SEL I* and *SEL II* involved a patent that shared the subject matter of the patent

application before him.  Even if this were the place to assess the ultimate merits of Samsung's

defense—which it is not—the presumption that the examiner has done his job correctly cannot

be relied upon to cure SEL's inequitable conduct.  That presumption is of even less avail in

defeating Samsung's allegations on the pleadings.

### c.      *SEL I* and *SEL II* are material to the '463 Patent.

SEL's third attempt to evade Samsung's inequitable conduct defense turns on the

assertion that Samsung has not sufficiently alleged the materiality of *SEL I* and *SEL II* to

the '463 Patent.  Mot. at 8.  In particular, SEL argues that Samsung's pleadings are deficient

because the allegation that "'the existence of litigation' was material is far too vague to meet the

*Exergen* and Rule 9(b) pleading standards."  Mot. at 8.  SEL's argument fails for two reasons.

First, SEL is wrong that the existence of litigation, by itself, cannot be material.  The law is clear

that, where the subject matter of a patent is involved in litigation, the mere existence of that

litigation *is* material to a patent application and must be specifically disclosed—quite apart from

any prior art or other facts at issue in that litigation.  MPEP § 2001.06(c); *Nilssen v. Osram*

*Sylvania*, Inc. 504 F.3d 1223, 1234 (Fed. Cir. 2007).  In *Nilssen*, the Federal Circuit affirmed the

district court's finding of inequitable conduct where the patentee failed to disclose a litigation

involving the subject matter of the patents-in-suit.  *Id*.  As the Court explained,

> It is clear from the language of § 2001.06(c) that the existence of
> the litigation itself is material information that an examiner needs
> to have.  It is important because it signals the examiner that other
> material information relevant to patentability may become
> available through the litigation proceedings.  The PTO obviously
> considers such information material and there is no basis for us to
> conclude otherwise.

*Id.; see also McKesson Info. Solutions, Inc. v. Bridge Med.*, *Inc.*, 487 F.3d 897, 925 (Fed. Cir.

2007) (finding patentee committed inequitable conduct when it failed to notify the examiner of

an adverse decision in a closely-related patent application).

As Samsung alleges, the '636 Patent (at issue in *SEL I* and *SEL II*) shares the same

subject matter and substantially similar claims as the '463 Patent at issue here.  Answer ¶¶ 97-98.

The two patents are also closely related because SEL sought to recapture the subject matter of

the claims of the '636 Patent in the '463 Patent.  Answer ¶¶ 97-98, 148.  Because of this

immediate relationship, the mere existence of litigation pertaining to the '636 Patent is material

to the prosecution of the '463 Patent as a matter of law.  *See* MPEP § 2001.06(c); *Nilssen*, 504

F.3d at 1234; *McKesson*, 487 F.3d at 925.  Samsung's allegations that SEL did not disclose this

material information easily satisfy Rule 9(b) and *Exergen*.

What is more—and contrary to SEL's suggestion—Samsung has ***not*** alleged merely that

SEL failed to disclose the existence of the *SEL I* and *SEL II* litigation.  Instead, Samsung's

pleading identifies specific material information arising from the earlier litigation, including the

pleadings of inequitable conduct and summary judgment motions regarding unenforceability that were filed there.  Answer ¶ 100; *see also* MPEP § 2001.06(c) (stating that examples of material information arising in litigation "include evidence of . . . prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure").  These pleadings provide evidentiary support showing how SEL materially misrepresented the prior art with an intent to deceive the PTO.  Hence, although unnecessary to the sufficiency of its pleadings in this action, Samsung has in fact identified specific documents created in the *SEL I* and *SEL II* litigations that SEL was duty-bound to disclose but which it withheld from the PTO.  Samsung has plainly satisfied the requirement under Rule 9(b) and *Exergen* that it plead the withholding of material information.

>   **d.    Samsung alleges facts sufficient to reasonably infer Dr. Yamazaki intentionally concealed *SEL I* and *SEL II*.**

Unable to suppress the materiality of SEL's omission before the PTO, SEL next argues that Samsung has failed to allege facts showing deceptive intent.  SEL's argument fails because it relies on the same obvious misstatements of the law identified above.  First, contrary to SEL's interpretation, *Exergen* does not hold that, at the pleading stage, "the inference of deceptive intent from [the alleged facts] 'must be the *single most reasonable* inference able to be drawn from the evidence . . . .'"  Mot. at 4 (quoting *Exergen*, 575 F.3d at 1329 n.5) (emphasis original).  Instead, *Exergen* states that to pass muster under Rule 9(b), the allegations (which are assumed to be true) need only allow a court to "reasonably infer that a party acted with the requisite state of mind."  *Exergen*, 575 F.3d at 1329.  Such a reasonable inference need only be "plausible" and "flow[] logically from the facts alleged . . . ."  *Id*. n.5.  What is more, *Exergen* itself confirms the settled principle under Rule 9(b) that intent can be pleaded generally.  *Id*. at 1328.  Because it is predicated on an erroneous legal standard, SEL's argument collapses.

SEL's second argument fares no better.  SEL contends that deceptive intent cannot be inferred from "burying" because, as a matter of law, burying cannot give rise to inequitable conduct.  As noted earlier, that is not the law.  As the Federal Circuit stated in *Molins*, "burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith."  48 F.3d at 1184; *see also* cases cited *supra* Part III.A.1.a.  Recent decisions by this Court also acknowledge that "burying" can provide a basis for proving inequitable conduct.  *See First Years*, 2008 WL 4682553, at *3 (permitting defendant to amend inequitable conduct pleadings that alleged plaintiff buried a material reference); *First Years v. Munchkin, Inc.*, 575 F. Supp. 2d 1002, 1022 (W.D. Wis. 2008) (Crabb, J.) ("To establish that withheld *(or buried)* prior art was 'material,' defendant was required to prove that it was not merely cumulative of art already before the patent examiner") (emphasis added).  Because burying a reference can be probative of intent, SEL's argument fails as a matter of law.

That the *SEL I* and *SEL II* opinions were submitted as exhibits to a declaration in support of a summary judgment motion of unenforceability of the '941 Patent, does not change the result.  SEL argues that the examiner of the '463 Patent was likely well-informed of the *SEL I* and *SEL II* opinions because they had been included in the defendant's summary judgment papers in the *Acer* litigation over the '941 Patent—to which the '463 Patent is related.  Mot. at 10.  These arguments simply urge the court to adopt SEL's preferred inferences over those advanced by Samsung.  This is improper under Rule 12(b).

For purposes of this motion, all inferences must be drawn in favor of Samsung.  *See First Years*, 2008 WL 4682553, at *2 ("In considering a motion to dismiss for failure to state a claim, the court must accept as true well-pleaded factual allegations, drawing all reasonable inferences in favor of the pleading party.").  What is more, SEL offers no evidence that the *Acer* briefing

15

adequately informed the examiner as to the merits of the inequitable conduct defense. To the extent that an inference must be drawn, the Court should conclude for purposes of this motion that the *Acer* briefing did not adequately inform the examiner of the '463 Patent's unenforceability. SEL's argument fails.

> ## 2.    Samsung Has Properly Alleged That SEL Intentionally And Deceptively Withheld The '974 Patent.

Samsung alleges that during the prosecution of the '463 Patent, SEL, through Shunpei Yamazaki and its patent attorneys, intentionally withheld prior art reference U.S. Patent No. 4,072,974 ("the '974 Patent"). Answer ¶¶ 110-124. SEL does not challenge the sufficiency of Samsung's allegations as to the "who, what, when, where, and how" of SEL's inequitable conduct. SEL's only contention here is that Samsung's allegations are insufficient because they do not show Dr. Yamazaki's knowledge of the material reference or the intent to withhold it from the PTO. Mot. at 11-13. Again, SEL relies on an erroneous standard.

Under *Exergen*, allegations of inequitable conduct need only allow a court to reasonably infer intent to deceive and knowledge of the material reference. *Exergen*, 575 F.3d 1328-29. As summarized below, Samsung's allegations easily satisfy the *Exergen* standard:

> **Knowledge/Intent:** Dr. Yamazaki had knowledge of the '974 Patent because he disclosed the '974 patent during the prosecution of at least nine of his other patents. Answer ¶ 120. Dr. Yamazaki's involvement in the prosecution of these nine patents is underscored by the Court's statement in *SEL I* that "[t]here is no doubt . . . that it is Dr. Yamazaki who ultimately determines what information is disclosed to the PTO in connection with his patent applications." Answer ¶ 121 (citing *SEL I*, 4 F. Supp. 2d at 488 n.18 (noting that Dr. Yamazaki revoked the power of attorney in connection with a patent application because the patent attorney wished to disclose additional references to the USPTO against Dr. Yamazaki's request)).
>
> Dr. Yamazaki's knowledge of the specific relevant teachings of the '974 Patent is evidenced by the fact that, during the prosecution of '132 Patent, on which Dr. Yamazaki is a named inventor, the

> examiner rejected the claims of the '132 Patent based, in part, on
> the '974 Patent.  Answer ¶ 122.  In the rejection, the examiner
> specifically directed Dr. Yamazaki to the structure of the thin-film
> transistor disclosed by the '974 Patent.  *Id*.  That is the very
> structure that is relevant to the '463 Patent now in suit.

> Dr. Yamazaki's knowledge of, and willingness to disclose,
> the '974 Patent in numerous patent applications, coupled with his
> failure to do so during the prosecution of the '463 Patent –
> notwithstanding his obvious knowledge of the '974 Patent's
> teachings on relevant thin film transistor structures – evidences his
> intent to conceal the reference from the PTO.  Answer ¶ 123.

These allegations allow the Court to reasonably infer that Dr. Yamazaki knew of the

reference and intentionally withheld it.

In an attempt to obscure the force of these allegations, SEL advances two arguments,

neither of which is sound.  First, SEL asserts that *Exergen* "holds that deceptive intent cannot be

inferred from the fact that a reference was cited previously."  Mot. at 11.  Second, SEL argues

that Samsung alleges no facts showing that Dr. Yamazaki was aware of the '974 Patent's specific

teachings.  Mot. at 12.  Both arguments ignore the relevant law and the substance of Samsung's

allegations.

Unlike Samsung, the defendants in *Exergen* attempted to show deceptive intent based

solely on the fact that the plaintiff had cited the omitted prior art reference in one earlier patent

prosecution.  *Exergen*, 575 F.3d at 1331.  Under those circumstances, the Court held that "[t]he

mere fact that an applicant disclosed a reference during prosecution of one application, but did

not disclose it during prosecution of a related application, is insufficient to meet the threshold

level of deceptive intent required to support an allegation of inequitable conduct."  *Id*.

*Exergen* is clearly inapposite here because the basis of Samsung's allegation that Dr.

Yamazaki knew of the relevant teaching of the '974 Patent is ***not*** merely that he cited the

reference in another patent application.  Rather, Samsung alleges that Dr. Yamazaki cited the

reference in at least **nine** prior applications.  Answer ¶ 120.  Moreover, unlike the defendant in *Exergen*, Samsung alleges that Dr. Yamazaki himself was closely involved in the application process of these nine patent applications and, that he was previously found to be the one "who ultimately determines what information is disclosed to the PTO in connection with his patent applications."  Answer ¶ 121.  Further, Samsung alleges that during the prosecution of one of Dr. Yamazaki's other patents, the examiner specifically directed Dr. Yamazaki to the thin-film transistor disclosed by the '974 Patent.  Answer ¶ 122.

In addition, while *Exergen* held that a patentee's citation of a reference in another patent application is, by itself, insufficient to show deceptive intent, the law is clear that such prior art references may be probative of bad faith when coupled with other relevant facts.  *See Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1378 (Fed. Cir. 2006) ("a trial court may infer deceptive intent based on a showing that a patentee withheld references with which it was intimately familiar and which were inconsistent with its own patentability arguments to the PTO").

Samsung's allegations are far more specific and concrete than the conclusory allegations rejected in *Exergen* and they readily permit this Court to infer that Dr. Yamazaki had knowledge of the material teachings of the '974 reference and intentionally withheld them from the PTO.

### 3.   Samsung Has Properly Alleged That SEL Made Affirmative Misrepresentations Of Material Fact To The PTO.

Samsung alleges that SEL, through Shunpei Yamazaki, made affirmative misrepresentations of material fact regarding the experiments and related findings discussed in the specification of the '463 Patent.  Answer ¶¶ 125-35.  SEL claims that Samsung's allegations are insufficient because they fail to allege any facts showing an actual misrepresentation to the PTO.  Mot. at 13-14.  This is wrong.  Each individual associated with the filing and prosecution of a patent application has a duty to not introduce inaccurate statements or inaccurate

experiments into the specification. *See* MPEP § 2004(8) ("No results should be represented as actual results unless they have actually been achieved. Paper examples should not be described using the past tense."). Samsung alleges that SEL violated that duty by falsely representing that certain experiments discussed in the '463 Patent's specification were conducted before the filing of the specification with the PTO when, in fact, there is evidence that such experiments had not been conducted at that time. Answer ¶¶ 125-35. Samsung's relevant allegations are summarized below.

> **Who/What:** During the prosecution of the '463 Patent, SEL, through Shunpei Yamazaki, made affirmative misrepresentations of material fact regarding the experiments and related findings discussed in the '463 Patent. Answer ¶ 129. Columns 8 and 9 of the '463 Patent describe experiments and their purported findings conducted on a semiconductor device embodying the first example described in the '463 Patent's Description of the Preferred Embodiments. Answer ¶ 130.
>
> But, Dr. Yamazaki testified in a prior litigation that the inventors did not possess a device embodying Example 1 before filing the Japanese priority application on June 30, 1980. Answer ¶ 131. Accordingly, the experiments described in the '463 Patent could not have been conducted prior to the filing of the '463 Patent's priority application. *Id.*

These allegations amply support an inference that SEL and Dr. Yamazaki had not conducted the experiments discussed in the '463 Patent's specification—not only at the time of the Japanese priority application, but also at the time the '463 Patent's specification was filed.[2] In the Rule 12(b) setting, such inferences must be drawn in Samsung's favor. *See First Years*, 2008 WL 4682553, at *2. SEL argues that Samsung's allegations are insufficient because they do not account for a one-year period between the filing of the '463 Patent's specification and the

---

[2] SEL complains that it is unclear whether Samsung is alleging that SEL misrepresented that it had conducted the experiments before the filing of the Japanese priority application or before the filing of the U.S. priority application. Mot. at 14. To clarify, Samsung alleges that SEL misrepresented that it had conducted the experiments before the filing of the U.S. priority application.

date one year earlier that Yamazaki testified he did not possess the device described in the specification. Mot. at 14. According to SEL this leaves a one-year period in which, theoretically, the experiments could actually have been performed. *Id.* Yet SEL's argument goes to the ultimate merits of Samsung's defense—not the sufficiency of its pleadings. In effect, SEL is arguing that, because Samsung has not yet marshaled all the facts necessary to conclusively prove its defense, the defense should be dismissed, and Samsung should be denied the opportunity to further develop the facts in discovery. That amounts to the theory that Samsung must prove its defense before it can plead it—a view that has repeatedly been rejected. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945-46 (N.D. Ill. 2006); *3Com Corp. v. D-Link Sys.,* 2007 U.S. Dist. LEXIS 26540, at *10 (N.D. Cal. Mar. 27, 2007). As with previous attempts, SEL's argument improperly conflates a Rule 12(b) motion with summary judgment or a trial on the merits.

### 4.     Samsung Has Properly Alleged That The '463 Patent Is Unenforceable Under the Doctrine of Infectious Unenforceability.

Samsung alleges that SEL's inequitable conduct during the prosecution of the '636 Patent renders the '463 Patent unenforceable under the doctrine of infectious unenforceability. Answer ¶¶ 136-49. Under that doctrine, inequitable conduct with respect to one patent may render other patents unenforceable, even if the other patents are not within the same family, if the inequitable conduct has an "immediate and necessary relation" to the patent-in-suit. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). To determine whether there is an immediate and necessary relationship between the inequitable conduct in one patent and the prosecution of another, a court must ultimately balance all the facts and the equities and ascertain, in its equitable discretion, whether it would be unfair to allow a patent holder to assert a patent in view

of his misconduct in another application.  *See id*. at 245-46; *Precision Instrument*, 324 U.S. at 814-15.

The Supreme Court's decision in *Keystone Driller* illustrates the breadth and flexibility of this doctrine.  There, the plaintiff asserted five patents in an infringement suit, including one that had been held valid and infringed in a prior action, and attempted to obtain a temporary injunction on the basis of the earlier judgment.  *Id.* at 242.  In the subsequent action, the defendant presented evidence of fraud by the inventor of the first patent, showing that he had suppressed evidence of prior commercial use of the invention.  *Id.* at 243.  Although there was no evidence of misconduct with respect to the other four patents, the Supreme Court found them to be closely related to one another by subject matter.  *Id.* at 246.  Thus, the Court affirmed the dismissal of all claims of infringement, reasoning that the inequitable conduct with respect to the first patent also vitiated any claims of infringement of the other four.  *Id.* at 246-47.  Specifically, the Supreme Court found an "immediate and necessary" relationship between the closely-related patents even where the patentee's misconduct in one patent did not afford some "material benefit" to the prosecutions of the other patents.  *Id*.

The decision in *Precision Instrument* reinforces this point.  There, the Supreme Court held unenforceable three patents by two different inventors directed to automotive tools, all of which had been assigned to Automotive.  One of the patents (the Larson patent) had originally been obtained by Precision through fraud by one of Precision's inventors.  Precision had asserted the Larson patent in an interference proceeding against Automotive, and Automotive had discovered the fraud.  Rather than inform the PTO, Automotive settled with Precision and acquired an assignment of the patent to itself.  *Id.* at 809.  In the subsequent action against Precision, the Court stated:

> Automotive, with at least moral and actual certainty if not absolute
> proof of the facts concerning the perjury, chose to act in disregard
> of the public interest.  Instead of doing all within its power to
> reveal and expose the fraud, it procured an outside settlement of
> the interference proceedings, acquired the Larson application itself,
> turned it into a patent and barred the other parties from ever
> questioning its validity.

*Id.* at 816.  There, Automotive's concealment of the fraud in procuring the Larson patent did not

afford any "benefit" to Automotive's other two patent applications.  Nevertheless, the Supreme

Court found that Automotive's failure to disclose the fraud underlying the Larson Patent infected

the entire action and barred Automotive from asserting any of the patents relating to the

automotive tools.  *Id.* at 819.

SEL now asserts the '463 Patent against Samsung in an attempt to circumvent the finding

of the '636 Patent's unenforceability, and the doctrine of infectious unenforceability applies to

prevent such behavior.  Where the subject matter of a patent has been found unenforceable due

to the patent applicant's inequitable conduct, the patent applicant cannot reclaim the subject

matter in a separate patent application through manipulation of the patent system.  *See Cognex

Corp. v. VCode Holdings, Inc.*, 2008 U.S. Dist. LEXIS 40370, at *96-98 (D. Minn. May 19,

2008) (finding the inequitable conduct in a first patent rendered a related patent claiming

substantially similar subject matter also unenforceable).  Inequitable conduct in a prior patent

must be properly cured through full disclosure or it will "continue to infect the process; cure

cannot be achieved through manipulation of patent prosecution procedures, such as canceling or

amending claims or filing continuation and divisional applications."  *Semiconductor Energy Lab.*,

24 F. Supp. 2d at 545-46 (citing *Rohm & Haas*, 722 F.2d 1556).  Rather than cure its inequitable

conduct, SEL sought a new patent covering the same subject matter in order to evade its

wrongdoing.

Second, as a factual matter, although Samsung need allege no material benefit, there can be no doubt that SEL improperly sought to benefit from the '463 Patent by using it as a vehicle to recapture patented subject matter held unenforceable by the Eastern District of Virginia. As Samsung alleges, the '636 Patent was at issue in a prior litigation involving SEL and Samsung in the Eastern District of Virginia. Answer ¶ 139. On August 12, 1997, shortly after Samsung raised its inequitable conduct defense, SEL amended all of the claims in the '463 Patent largely to mirror those in the '636 Patent.[3] Answer ¶ 148. Subsequently, after a seven-day bench trial, the district court found that each claim of the '636 Patent was unenforceable due to SEL's inequitable conduct before the PTO. Answer ¶ 141. In short, Samsung has alleged that, rather than disclose the litigation and the findings of inequitable conduct to the PTO, Dr. Yamazaki continued to prosecute the '463 Patent before the PTO and ultimately convinced the PTO to allow the claims, essentially reviving the subject matter of the '636 Patent. Plainly, Samsung has alleged an immediate and necessary relationship between the two patents and that both are infected with SEL's misconduct.

Unable to prevail on the applicable legal standard, SEL next argues that, as a factual matter, the '636 Patent is not substantially similar to, and mirrored by, the invention claimed by the '463 Patent because the '463 Patent does not have a so-called "low-impurity limitation" that was found in the '636 Patent. This argument is untenable for at least two reasons. First, the argument again goes to the ultimate merits of Samsung's defense—not the sufficiency of its pleadings.

Second, the argument's logic is backwards because SEL cannot dispute that the limitations in Claims 1, 2, 8, 9, 12, and 14 of the '463 Patent are reflected by similar limitations

---

[3] Paragraphs 98 and 146 of Samsung's Answer inadvertently misstate that the amendments to the '463 Patent were made three days prior to Judge Ellis' ruling.

in Claims 4, 5, and 7 of the '636 Patent.  SEL's assertion that the '463 Patent does not contain a

"low impurity limitation" does not support its argument that it did not recapture the claims of

the '636 Patent in the '463 Patent; indeed, SEL's argument is tantamount to an admission that

the claims of the '463 Patent are broader than, and thus inclusive of, those of the '636 Patent.

Faced with invalidating prior art and charges of inequitable conduct in *SEL I*, SEL used the '463

application as a vehicle to correct the mistakes of the '636 Patent and cleanse the subject matter

of the taint from SEL's inequitable conduct.  Samsung's allegations permit this Court to

reasonably infer an "immediate and necessary" relationship between the two patents.

### B.  Samsung Has Properly Alleged Inequitable Conduct With Regard To The '402 Patent.

Samsung alleges that during the prosecution of the '402 Patent, SEL engaged in

inequitable conduct by intentionally withholding prior art reference JP 06-138491 ("the JP'491

reference").  SEL's only argument against these allegations is that Samsung purportedly fails to

state that the withheld prior art was non-cumulative over the art of record.  Mot. at 18.

This argument is a non-starter.  Samsung's position is that the teachings of the JP'491

reference is non-cumulative over the art of record, and that is apparent from its allegations.  As

Samsung alleges, during the prosecution of the '402 Patent, the examiner rejected the pending

claims in view of U.S. Patent No. 5,108,650 ("*Koden*").  Answer ¶ 154.  In response to this

rejection, SEL did not dispute the examiner's conclusion that *Koden* and the art of record

disclosed nearly all of the claimed limitations.  Answer ¶ 155.  SEL's sole argument that its

claims were distinguishable over *Koden* and the other art cited by the examiner was that those

references did not disclose one specific feature: a sealing material that was in contact with the

inorganic insulating film.  *Id*.  The examiner agreed, allowing the pending claims and remarking

that the reason for allowance of the independent claims was because the prior art did not teach a sealing material in contact with the inorganic insulating film.  Answer ¶ 156.

Thereafter, SEL submitted to the PTO the original Japanese version of the JP'491 reference, along with an English translation of the abstract.  Answer ¶ 157.  As Samsung has alleged, the JP'491 reference disclosed the very feature that SEL argued was not disclosed by the art of record, and on the basis of which the examiner ultimately allowed the claims (*i.e.*, a sealing material in contact with an inorganic insulating film).  Nevertheless, SEL concealed this material teaching by submitting a partial translation that omitted it.  Answer ¶ 158.

Samsung's allegations make clear that the JP'491 reference is non-cumulative because Samsung states that the reference is "highly material to each of the '402 Patent's independent claims because it discloses the distinguishing limitation that SEL argued ***was not found in the prior art***."  Answer ¶ 157.  Moreover, Samsung also alleges that the examiner's reason for allowance of the claims was because ***the prior art did not teach a sealing material in contact with the inorganic insulating film***.  Answer ¶ 156.  The Court can reasonably infer that the JP'491 reference's teaching of the sealing material in contact with the inorganic insulating film was not cumulative because both SEL's and the examiner's statements in the file history reflected their understanding that the feature was not taught by the prior art.  Accordingly, Samsung sufficiently alleges that SEL committed inequitable conduct that renders the '402 patent unenforceable.

### C.   Samsung Has Properly Alleged Inequitable Conduct With Respect To The '516 Patent.

Samsung alleges that during the prosecution of the '516 Patent, SEL, through Shunpei Yamazaki and its patent attorney John F. Hayden, engaged in inequitable conduct by intentionally withholding Japanese Publication Number JP 06-82811 ("the JP'811 reference"),

which formed the basis of a rejection in the '516 Patent's Japanese priority application.

Samsung's allegations are summarized, in relevant part, below.

> **What:** The '516 Patent claims priority to the JP'229 Application.
> On January 4, 2005, during the prosecution of the JP'229
> Application, the examiner rejected the pending claims primarily
> based on the JP'811 reference. Answer ¶ 172. The Japanese
> examiner rejected Claims 1-4, 6, 8-13, and 20-21 of the JP'229
> Application based solely on the JP'811 reference. *Id.* In addition,
> the Japanese examiner rejected 23 of the claims of the JP'229
> Application based on a combination of the JP'811 reference and
> the JP'578 reference. *Id.* Dr. Yamazaki and Mr. Hayden
> intentionally withheld the JP'811 reference from the PTO. Answer
> ¶ 165.

> **Why/How:** The JP'811 reference is material to the '516 Patent
> application because the reference formed the basis of a rejection in
> a foreign counterpart application and because it discloses many of
> the claimed features of the '516 Patent. Answer ¶¶ 173-74. A
> contrary finding relating to the JP'229 Application is also material
> to the '516 Patent because the '516 Patent is closely related to the
> JP'229 Application and because they both disclose the same
> subject matter and share substantially similar claims. Answer
> ¶¶ 167-70.

> The JP'811 reference is not cumulative over the art of record.
> Answer ¶ 175. During the prosecution of the '516 Patent, SEL
> argued that the claims were allowable over prior art, in part,
> because the prior art failed to disclose a dummy conductive layer
> that was electrically isolated from the scanning and signal lines. *Id.*
> Because the JP'811 reference discloses a dummy conductive layer
> that is electrically isolated from the scanning and the signal lines, it
> is not cumulative over the art of record. *Id.*

> **Knowledge/Intent:** The '516 Patent was still pending before the
> PTO at the time of the Japanese priority application's rejection.
> On March 9, 2005, SEL filed an IDS disclosing all of the
> references cited by the Japanese examiner except the JP'811
> reference. Answer ¶ 176. SEL's disclosure of all the references
> cited by the Japanese examiner *except* the primary and most
> relevant one demonstrates SEL's intent to withhold the reference
> from the PTO. *Id.*

> SEL's intent to deceive is further evidenced by its failure to
> apprise the examiner that the references submitted in IDS formed
> the basis of a rejection of the related Japanese priority application.

Answer ¶ 177.  Instead, SEL stated only that "each item of information contained in this statement, with the exception of [U.S. Patent No. 5,285,301], was cited in a communication from a foreign patent office in a counterpart foreign application . . . ."  *Id*.  By failing to disclose that the references were relied upon to reject claims in a closely related Japanese counterpart application, SEL further concealed the references' materiality.  *Id*.

1.     **Samsung Has Identified The Specific Individuals Who Withheld The JP'811 Reference.**

As its first line of attack, SEL asserts that Samsung has not alleged a specific individual with a duty of disclosure to the PTO who knew of the material information and withheld that information with the intent to deceive.  Mot. at 19.  This assertion ignores the allegations in which Samsung expressly identifies two such individuals: Shunpei Yamazaki and John F. Hayden.  Answer ¶ 166.

Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the PTO.  37 C.F.R. § 1.56(c).  As Samsung alleges, "[t]here is no doubt . . . that it is Dr. Yamazaki who ultimately determines what information is disclosed to the USPTO in connection with his patent applications."  Answer ¶¶ 121, 198, 207 (citing *SEL I*, 4 F. Supp. 2d at 488 n.18).  Therefore, Samsung has alleged facts sufficient to establish that Dr. Yamazaki is "associated" with the filing and prosecution of the '516 Patent.  In addition, Mr. Hayden, as the attorney prosecuting the '516 Patent, also had a clear duty of disclosure to the PTO.  Accordingly, Samsung has sufficiently named two specific individuals who violated their duty of disclosure to the PTO.

2.     **Samsung Alleges Facts Sufficient To Reasonably Infer Knowledge Of, And An Intent To Withhold, The JP'811 Reference.**

SEL next contends that Samsung's allegations do not support a reasonable inference that Dr. Yamazaki or Mr. Hayden had knowledge of the JP'229 Application and the JP'811 reference.  Mot. at 21.  This argument ignores Samsung's allegations that Dr. Yamazaki, as president and

27

majority shareholder of SEL, ultimately determined what prior art was to be submitted to the PTO in his applications.  Answer ¶¶ 121, 198, 207.  Given his intimate involvement in the prosecution of SEL's patents, the Court can reasonably infer that he knew of the JP'229 Application and the JP'811 reference, which had been cited there as a basis for the Japanese examiner's rejection decision.

SEL also suggests that there is no "nexus" between Mr. Hayden, the American lawyer who prosecuted the '516 Patent, and the '516 Patent's co-pending Japanese priority application. Mot. at 22.  This suggestion strains credibility.  As Samsung has alleged, Mr. Hayden was the lead attorney prosecuting the '516 Patent.  In that position, Mr. Hayden undoubtedly had knowledge of such significant developments as the rejection of the Japanese priority application upon which the '516 Patent depended, and such a commonsense inference must, at the pleading stage, be made in Samsung's favor.  *First Years*, 2008 WL 4682553, at *2.  Samsung's allegations easily permit a reasonable inference that Mr. Hayden, like Dr. Yamazaki, knew of the co-pending application's rejection.[4]

Samsung's allegations likewise permit a reasonable inference that Dr. Yamazaki and Mr. Hayden withheld the JP'811 reference with an intent to deceive.  In an IDS meant to apprise the PTO of the Japanese office action, SEL disclosed all of the references cited by the Japanese examiner *except* the JP'811 reference—the one reference upon which the Japanese examiner had relied for a rejection.  Answer ¶ 176.  Dr. Yamazaki was well aware of the teachings of the JP'811 reference, and it can reasonably be inferred that he intentionally withheld the prior art

---

[4] As of the filing of this Motion, SEL has refused to produce any meaningful, relevant communications between SEL and its patent attorneys. *See, e.g.*, Berliner Decl. Ex. 2 at 2 [Letter from J. Koppy to B. Berliner (September, 18, 2009)].  Such documents would allow Samsung to conclusively establish who had knowledge of the JP'811 reference and who decided to withhold it.  It is clear that at some point certain references cited by the Japanese examiner were communicated to Mr. Hayden.  This communication would show whether or not the JP'811 reference was hidden from Mr. Hayden or whether Mr. Hayden himself decided to withhold this information. Because SEL continues to block Samsung's discovery requests, Samsung cannot be expected to prove its claims at this stage, nor does Samsung have to do so.

reference from the PTO because he knew that its teachings directly undermined SEL's arguments for patentability.  Answer ¶ 176.

SEL's intent to deceive the PTO is further evidenced by its failure to make it clear to the PTO that the references it submitted in its March 9, 2005 IDS had not been part of just any routine communication from the Japanese patent office—but, rather, had been cited in a notice of rejection of the JP'229 Application.  Answer ¶ 177.  Rather than disclose the rejection to the examiner, SEL's IDS only states that the references were cited in "communication from a foreign patent office."  *Id*.  SEL argues that because its IDS is in technical compliance with Patent Rule 1.97(e)(1), which requires this language in IDS submissions disclosing prior art raised by a foreign patent office, no deceptive intent may be inferred from the IDS.[5]  Mot. at 22. Once again, this argument misstates the law.  SEL had a duty of candor to inform the examiner of the JP'229 Application's rejection.  *Id*.  Where substantially similar claims are rejected in a counterpart application, the rejection, in and of itself, may be material.  *See McKesson*, 487 F.3d at 919 (holding that a rejection of substantially similar claims in a co-pending U.S. application is material to a patent application, irrespective of the rationale behind the rejection); *see also Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003) ("[m]ateriality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent.").  Here, the Japanese examiner's rejection implicated all of the pending claims of the JP'229 Application.  A reasonable examiner would have considered that information

---

[5] 37 C.F.R. § 1.97(e)(1) states, in relevant part, that an IDS disclosing references cited in a foreign patent office must state: "That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement."  Patent Rule 1.97(e)(1) is not directed to a patent applicant's duty to disclose to the PTO rejections from copending foreign counterpart applications.  Rather, it allows the patentee to avoid a late fee for submitting prior art more than three months after the filing date of the patent application where the prior art was raised in a communication from a foreign patent office.

important.  SEL's failure to inform the PTO of the rejection in the JP'229 Application breaches its duty of candor.

Moreover, technical compliance with Patent Rule 1.97(e)(1) does not shield SEL from allegations of inequitable conduct.  As discussed above, in the parties' prior litigation, SEL was found to have intentionally withheld a material Japanese reference ("the Canon reference") by submitting a misleading, partial translation of the reference.  *SEL II*, 204 F.3d at 1375.  There, SEL argued that it "meticulously complied with [Patent Rule 1.98] by providing an accurate, concise explanation of the relevance of the Canon reference and a pre-existing partial translation."  *Id*.  The Federal Circuit rejected this argument.  As the Court explained:

> SEL cannot overcome a finding of deceitful intent merely by showing that it did certain things properly. Rather, SEL must explain its conduct in failing to provide a more complete translation or concise explanation of the Canon reference.  This it simply does not do.  As the district court noted, "the record as a whole reflects a clear pattern and practice of initial disclosure, followed by incremental disclosure only when compelled by the circumstances to do so, followed, at times, by mischaracterization."
>
> SEL's technical compliance with Rule 98 and its entreaty to MPEP § 609A(3) lend it little aid.  Though Rule 98 requires that the applicant provide any existing translation of a foreign reference, Rule 98 provides neither a safe harbor nor a shield against allegations of inequitable conduct.  As the district court explained, Rule 98 merely "provides a floor for required submissions of translations of foreign applications, not a ceiling; it is by no means an excuse or license for concealing material portions of a prior art reference."

*Id*. at 1376.

SEL's technical compliance with Patent Rule 1.97(e)(1) does not provide a "safe harbor" any more than its compliance with Rule 98 did in *SEL II*.  It provides minimum requirements with which an applicant must comply; it does not absolve the applicant of its more general duty of candor.  SEL had a duty to inform the examiner not only of references disclosed in the

rejection but also of the fact of the rejection itself, and it failed to do so.  Based on the facts as

pleaded, the Court can reasonably infer an intent to deceive.

### 3. Samsung Alleges That The JP'811 Reference Is Non-Cumulative.

As its final argument, SEL asserts that, because the '793 Patent (the U.S. counterpart of

the JP'811 reference) was before the examiner, the JP'811 reference is cumulative of the record.

This argument, too, must be rejected for at least two reasons.  First, as a threshold matter, the

argument relies on facts found nowhere in the pleadings and is therefore improper in a motion to

dismiss.[6]

Second, SEL's argument ignores that a rejection of a related application is itself highly

material—not merely the disclosures cited as part of the rejection.  Hence, the JP'811 reference

is material not just because of its technical teachings, but because it formed the basis of a

rejection in a substantially similar counterpart application.  Answer ¶¶ 173-75.  *Bristol-Myers*,

326 F.3d at 1234 ("[m]ateriality is not limited to prior art but embraces any information that a

reasonable examiner would be substantially likely to consider important in deciding whether to

allow an application to issue as a patent.").  As a matter of law, a reasonable examiner would

consider a rejection in a closely related counterpart application important to the application

before him.  *See McKesson*, 487 F.3d at 919; *see also J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747

F.2d 1553, 1566 (Fed. Cir. 1984) (inferring intent where patent applicant failed to disclose a

prior art reference that formed the basis of rejection in foreign counterpart applications).

In this case, the fact that the JP'811 reference formed the primary basis of a rejection has

particular significance.  The Japanese examiner rejected all of the pending claims in the JP'229

Application, including claims that recited the limitation that the "dummy" conductive layer be

---

[6] On a motion to dismiss, such reliance is improper and SEL's argument should be rejected on that ground as well as because of its lack of substantive merit.  *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. Wis. 1996); W.D. Wisconsin Briefing Guidelines.

electrically isolated from the scanning and signal lines. Thus, SEL was on notice that the JP'811 reference disclosed this specific limitation. Nevertheless, during the prosecution of the '516 Patent application, SEL argued that the art of record failed to disclose a dummy conductive layer that was electrically isolated from the scanning and signal lines. Answer ¶ 175. By concealing the JP'229 rejection from the PTO, SEL hid material information directly in conflict with its representations to the PTO. On these facts, the Court can reasonably infer that SEL withheld material, non-cumulative information.

> **D.** **Samsung Has Properly Alleged Inequitable Conduct With Regard To The '937 Patent.**
>
> > **1.** **Samsung Has Sufficiently Pleaded That The Unenforceability Of The '542 Patent Applies To The '937 Patent.**

Samsung alleges that during the prosecution of the '542 Patent, SEL, through Dr. Yamazaki and its patent attorney Scott Harris, withheld material information found in prior art reference Japanese Publication Number 59-72745 ("the JP'745 reference") with an intent to deceive the PTO. Answer ¶¶ 180-91. Samsung further alleges that SEL's inequitable conduct in procuring the '542 patent bears an "immediate and necessary" relationship to the '937 Patent, and renders it unenforceable. Answer ¶ 191. In an effort to circumvent these allegations, SEL argues (1) that Samsung's allegations of inequitable conduct against the '542 Patent are not pleaded with particularity, and (2) that Samsung has not established an "immediate and necessary" relationship between the '542 Patent's inequitable conduct and the '937 Patent. As discussed below, both arguments are untenable.

> > **a.** **Samsung has sufficiently pleaded SEL's inequitable conduct in procuring the '542 Patent.**

SEL contends that Samsung's allegations regarding the inequitable conduct regarding the '542 Patent are insufficient in two respects. First, SEL argues that Samsung fails to allege

that the withheld reference was not cumulative over the art of record.  Mot. at 23-24.  Second,

SEL claims that Samsung has failed to allege deceptive intent.  Mot. at 25.  Neither argument is

cogent.

 As an initial matter, Samsung's allegations of non-cumulativeness could not be clearer:

> The JP'745 reference is not cumulative over the art of record
> because it discloses the use of three insulating layers comprising
> silicon nitride, an inorganic film above the silicon nitride, and an
> organic film above the inorganic film.

Answer ¶ 190.  As *Exergen* states, and SEL quotes, pleadings of inequitable conduct must

identify "the particular claim limitations, or combinations of limitations, that are supposedly

absent from the information of record."  *Exergen*, 575 F.3d at 1329-30; Mot. at 24.  Samsung's

above allegation plainly does this.  *See also SEL II*, 204 F.3d at 1374 ("A withheld reference may

be highly material when it discloses a more complete combination of relevant features, even if

those features are before the patent examiner in other references.") (citing *Molins*, 48 F.3d at

1180).

 Second, Samsung has alleged facts that allow a court to reasonably infer Dr. Yamazaki's

knowledge of, and intent to withhold, the material portions of the JP'745 reference.  As Samsung

alleges, during the prosecution of the '542 Patent, Dr. Yamazaki, himself, submitted the JP'745

reference to the PTO.  Answer ¶ 186.  Furthermore, the examiner brought the JP'745 reference to

Dr. Yamazaki's attention when the examiner rejected the pending claims based on the JP'745

reference.  Answer ¶ 188.  Under these facts, it is reasonable for the Court to infer that Dr.

Yamazaki, a person that is purportedly very skilled in the art and directly involved in the

prosecution of his patent applications, would have read the reference (which is only four pages

long) to understand and distinguish its teachings.

Moreover, an inference of intent is appropriate where highly material information is withheld, the applicant knew of the materiality of the information, and the applicant has not provided a credible explanation for the withholding.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313-14 (Fed. Cir. 2008) (citing *Ferring*, 437 F.3d at 1191); *see also Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997) ("a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead.").  Here, Samsung has sufficiently alleged facts showing Dr. Yamazaki knew of, and withheld, the JP'745 reference's highly material teachings.  Samsung's allegations allow this Court to reasonably infer Dr. Yamazaki's deceptive intent.

> ### b. Samsung's allegations establish an "immediate and necessary" relationship between the '542 Patent and the '937 Patent.

SEL also argues that Samsung has not established an "immediate and necessary" relationship between the '542 Patent's inequitable conduct and the enforcement of the '937 Patent.  But the "immediate and necessary" relationship is unambiguous.  Not only is the '937 Patent a descendant of the '542 Patent, the '937 Patent and the '542 Patent both claim the same three-film insulating stack taught in the withheld portion of the JP'745 reference.  Answer ¶ 191.  SEL's concealment of this three-film insulating stack during the prosecution of the '542 Patent directly benefited the patentability of both the '542 Patent and the '937 Patent.  Even using SEL's restrictive notion of the infectious unenforceability doctrine (which, as discussed in Part III.A.4, *supra* is improperly narrow) the doctrine clearly applies as between the '542 Patent and the '937 Patent.

In *SEL I*, the Court faced a similar situation.  There, the Court found that SEL had misrepresented a prior art reference ("the Tsai reference") during the prosecution of two patents

("the '455 Patent" and "the '494 Patent") that were ancestors of the patent-in-suit ("the '636

Patent"). *Semiconductor Energy Lab*, 24 F. Supp. 2d at 542-43.  SEL argued that its

misrepresentation of the Tsai reference in the prior patent applications could not support a

finding of inequitable conduct with respect to the '636 Patent.  *Id.* at 542.  The Court disagreed,

holding that the inequitable conduct against the '455 and '494 Patents was related to the '636

Patent because the withheld prior art and misrepresentations were "directly relevant to the

asserted claims of the '636 Patent."  *Id.* at 544.  Furthermore, the Court found that SEL's

motivation in prosecuting the '636 Patent was to "to conceal its prior inequitable conduct rather

than cure it."  *Id.*

Here, the asserted claims of the '937 Patent also relate directly to SEL's prior inequitable

conduct.  Indeed, as Samsung alleges, the '937 Patent claims the very information that was

intentionally withheld during the '542 Patent prosecution.  Answer ¶ 191.  In addition, SEL did

not try to cure its inequitable conduct during the '542 Patent.  Instead, SEL continued to conceal

the material teachings of the JP'745 reference during the '937 Patent prosecution.  Answer ¶ 195.

Samsung has sufficiently alleged an "immediate and necessary" relationship between the

inequitable conduct against the '542 Patent and the enforcement of the '937 Patent.

### 2. Samsung Has Properly Alleged That SEL Deceptively Withheld The JP'745 Reference.

Samsung alleges that during the prosecution of the '937 Patent, SEL, through Shunpei

Yamazaki and its patent attorney Scott Harris, withheld material information found in the JP'745

reference.  Answer ¶¶ 192-99.  As it did during the prosecution of the '542 Patent, SEL

submitted an untranslated version of the JP'745 reference with a partial translation that failed to

disclose the material teachings of the reference.  Answer ¶¶ 195-96.  SEL argues that Samsung's

allegations (1) insufficiently identify who committed the inequitable conduct, (2) fail to allege

non-cumulativeness, and (3) do not support an inference of deceptive intent.  Mot. at 26-27.  As discussed below, each of SEL's arguments is without merit.

> **a.      Samsung has identified Dr. Yamazaki as the specific individual who withheld the JP'745 reference.**

SEL again asserts that Samsung has failed to name a specific individual as required by *Exergen*.  Mot. at 26.  SEL's contention is baseless because Samsung has alleged that "SEL, through Shunpei Yamazaki and its patent attorneys," withheld material information found in the JP'745 reference.  By naming Dr. Yamazaki, Samsung has obviously satisfied the requirements of *Exergen*.

SEL also objects to Samsung's reference to unidentified "patent attorneys," but this objection is misplaced.  Mot. at 26.  The pleadings reference SEL's "patent attorneys" because Samsung believes that Dr. Yamazaki likely directed these agents to carry out the inequitable conduct.  This does not change the fact that Samsung has specifically alleged Dr. Yamazaki as the individual who violated his duty of candor to the PTO.

> **b.      Samsung has alleged that the JP'745 reference is non-cumulative.**

SEL next asserts that Samsung has not alleged that the JP'745 was non-cumulative over the art of record.[7]  Mot. at 27.  This assertion flies in the face of the express language in Samsung's Answer, which plainly alleges the non-cumulativeness of the JP'745 reference:

> The JP'745 reference is not cumulative over the art of record because it discloses the use of three insulating layers comprising silicon nitride, an inorganic film above the silicon nitride, and an organic film above the inorganic film.

---

[7] SEL's Motion states "Samsung fails to allege why JP '745 was not cumulative to other references before the examiner in the **'542** prosecution."  Mot. at 27.  Samsung appreciates that this is likely an inadvertent error.  To avoid doubt, however, Samsung reiterates that it is alleging in this claim that the JP'745 reference is non-cumulative over the art of record in the **'937 Patent's** prosecution, not the **'542 Patent's** prosecution.

Answer ¶ 197.  As *Exergen* states, pleadings of inequitable conduct must identify "the particular claim limitations, or combinations of limitations, that are supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1329-30; Mot. at 24.  Samsung's allegation plainly does this.  *See also SEL II*, 204 F.3d at 1374 ("A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references.") (citing *Molins*, 48 F.3d at 1180).

> ### c.   Samsung has alleged facts sufficient to reasonably infer SEL's knowledge of, and intent to withhold, the JP'745 reference.

Finally, SEL argues that Samsung's allegations of intent are insufficient.  Mot. at 27.  This argument also misses the mark.  Samsung has alleged that, during the prosecution of both the '542 and '937 Patents, Dr. Yamazaki himself submitted the JP'745 reference to the PTO.  Answer ¶¶ 186, 198.  In addition, the examiner had already raised the JP'745 reference to Dr. Yamazaki's attention in a rejection during the '542 Patent prosecution and had based his rejection on precisely those teachings that are most relevant to the '937 Patent's prosecution.  Answer ¶ 188.  Thus, the alleged facts allow for a reasonable inference of Dr. Yamazaki's knowledge of the reference's relevant teachings.

Moreover, an inference of intent is appropriate where highly material information is withheld, the applicant knew of the materiality of the information, and the applicant has not provided a credible explanation for the withholding.  *Praxair*, 543 F.3d at 1313-14 (citing *Ferring*, 437 F.3d at 1191); *see also Critikon*, 120 F.3d at 1257.  Here, Samsung has alleged facts showing Dr. Yamazaki knew of, and withheld, the JP'745 reference's highly material teachings.  Accordingly, Samsung's allegations allow this Court to reasonably infer Dr. Yamazaki's deceptive intent.

### 3.  Samsung Has Adequately Alleged That SEL Withheld The '826 Patent.

Samsung alleges that during the prosecution of the '937 Patent, SEL, through Shunpei Yamazaki and its patent attorneys, intentionally withheld prior art reference U.S. Patent No. 5,656,826 ("the '826 Patent").  Answer ¶¶ 200-09.  Samsung's allegations, in relevant part, are summarized below.

> **Who/What:** During the prosecution of the '937 Patent, SEL, through Shunpei Yamazaki and its patent attorneys, committed inequitable conduct by failing to disclose the '826 Patent.  Answer ¶ 203.

> **Why/How:** The '826 Patent is material because, among other things, it discloses a specific three-film passivation stack (silicon nitride-inorganic-organic) over a thin film transistor.  Answer ¶ 203.  The '826 Patent is not cumulative over the art of record because it teaches the use of three insulating layers in a thin-film transistor device.  Answer ¶ 204.

> **Knowledge/Intent:** SEL's knowledge of the '826 Patent and SEL's intent to conceal the reference from the USPTO are shown in three ways. First, SEL disclosed the reference in at least nineteen other SEL patents that issued before the filing date of the '937 Patent.  Answer ¶ 205.

> Second, the '826 Patent was brought to the attention of SEL and Dr. Yamazaki during the prosecution of U.S. Patent No. 7,098,479 ("the '479 Patent"), on which Dr. Yamazaki is a named inventor. Answer ¶ 206.  The examiner specifically directed SEL and Dr. Yamazaki to the '826 Patent's teachings regarding insulating films. *Id*.  In response, SEL acknowledged that the '826 Patent discloses a leveling film, but distinguished the '826 Patent based on other grounds.  *Id*.

> Third, Dr. Yamazaki, a named inventor on the '937 Patent, was also a named inventor on at least ten of the prior patents in which SEL also disclosed the '826 Patent.  Answer ¶ 207.  As the court noted in *SEL I*, "[t]here is no doubt . . . that it is Dr. Yamazaki who ultimately determines what information is disclosed to the PTO in connection with his patent applications."  *Id*.

### a.   Samsung has identified Dr. Yamazaki as the specific individual who withheld the '826 Patent.

SEL contends that Samsung's allegations fail to identify the specific individuals who engaged in the inequitable conduct because of Samsung's reference to unspecified "patent attorneys." Mot. at 28. SEL's argument is baseless. Samsung's allegations clearly name Dr. Yamazaki, and the reference to SEL's "patent attorneys" does not change that fact.

### b.   Samsung has alleged that the '826 Patent is non-cumulative.

Next, SEL argues that "Samsung fails to allege why the '826 Patent is not cumulative over prior art of record." Mot. at 28. This ignores Samsung's allegation that "[t]he '826 Patent is not cumulative over the art of record because it teaches the use of three insulating layers in a thin-film transistor device." Answer ¶ 204. SEL attempts to evade this clear allegation by suggesting that it articulates only why the '826 Patent is "relevant to the '937 Patent instead of alleging why the '826 Patent is non-cumulative of other prior art." Mot. at 28. But this assertion simply mischaracterizes Samsung's allegation. By stating that a certain combination of teachings—namely the three insulating layers in a thin-film transistor—is "not cumulative," Samsung alleges that the combination is not disclosed in the art of record. That is all that *Exergen* requires.

### c.   Samsung has alleged facts sufficient to reasonably infer SEL's knowledge of, and intent to withhold, the '826 Patent.

SEL also argues that Samsung's allegations of intent are insufficient. Mot. at 28-30. SEL again argues that "*Exergen* has rejected inferring deceptive intent based on a patentee's citation of an allegedly withheld reference in other applications." Mot. at 28-29. Thus, according to SEL, Dr. Yamazaki's disclosure of the reference in ten other patent applications is not probative of his knowledge of the reference. However, as discussed above, *Exergen* did not hold that the patentee's citation of the reference in other patent applications cannot be probative

of intent. Such citations—when combined with other relevant facts—plainly can evidence knowledge of a reference and deceptive intent. *See Agfa*, 451 F.3d at 1378 ("a trial court may infer deceptive intent based on a showing that a patentee withheld references with which it was intimately familiar and which were inconsistent with its own patentability arguments to the PTO").

SEL also contends that Samsung has failed to allege that the examiner of SEL's '479 Patent recited each of the withheld reference's material teachings during his rejection, and therefore that Samsung's allegations fail to show that Dr. Yamazaki was aware of those specific teachings. Mot. at 29-30. SEL misses the point. Samsung's allegations need only allow the court to reasonably infer that Dr. Yamazaki had knowledge of the material teachings of the '829 Patent. *Exergen*, 575 F.3d at 1330. By alleging that the examiner alerted Dr. Yamazaki to the '826 Patent in a rejection and specifically directed Dr. Yamazaki to the insulating layers disclosed by the '826 Patent, Samsung has met its burden.

In addition, here—as throughout SEL's motion—SEL does not address Samsung's allegations collectively. Instead, SEL discusses each allegation in isolation, thus ignoring the logical inferences to be drawn from the allegations as a whole. Unlike the defendant in *Exergen*, Samsung does not allege merely that Dr. Yamazaki cited the reference in one other patent application. Rather, Samsung alleges that SEL disclosed the '826 Patent during the prosecution of at least **nineteen** other patents that issued before the filing of the '937 Patent, ten of which name Dr. Yamazaki as a named inventor. Answer ¶¶ 205, 207. This is particularly probative because the Court in *SEL I* found that "[t]here is no doubt . . . that it is Dr. Yamazaki who ultimately determines what information is disclosed to the PTO in connection with his patent applications." Answer ¶ 207 (quoting *SEL I*, 4 F. Supp. 2d at 488 n.18). Moreover, the

reference's specific teachings regarding insulating films were brought to Dr. Yamazaki's attention in a rejection during the prosecution of SEL's '479 Patent, and Dr. Yamazaki even distinguished the '826 Patent in his rebuttal argument to the examiner.  Answer ¶ 206.  All of these allegations, taken together, unquestionably lead to the reasonable inference that Dr. Yamazaki had specific knowledge of the '826 Patent's material teachings.

## IV.   IF THE COURT FINDS SAMSUNG'S ALLEGATIONS DEFICIENT, LEAVE TO AMEND SHOULD BE GRANTED.

For the reasons presented above, Samsung considers the allegations of the Answer to fully satisfy the particularity requirements of Rule 9(b). But, to the extent the Court finds any deficiencies in Samsung's allegations, Samsung respectfully requests leave to amend.  Where the pleadings concern fraud or inequitable conduct, it is common practice to permit a party that has failed to satisfy the particularity requirements of Rule 9(b) to amend its pleadings accordingly.  *See Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 537, 539-40 (M.D. N.C. 1999); *MercExchange, L.L.C. v. eBay, Inc.*, 271 F. Supp. 2d 784 (E.D. Va. 2002); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares leave to amend shall be freely given when justice so requires; this mandate is to be heeded.").  Courts also regularly allow multiple amendments where the defect is curable.  *See, e.g., Foman*, 371 U.S. at 182 (stating that leave to amend should be "freely given" in the absence of, among other things, "***repeated*** failure to cure deficiencies by amendments previously allowed") (emphasis added); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 610 (7th Cir. 1987).

Here, no countervailing considerations exist and leave to amend should be granted.  First, SEL will not be prejudiced by any potential amendments, which would be limited to supplementing Samsung's existing inequitable conduct claims.  Courts routinely grant leave to amend where proposed amendments do not introduce new legal theories or surprise the non-

41

moving party. *See, e.g., Sports Ctr., Inc. v. Brunswick Marine*, 63 F.3d 649, 652 (7th Cir. 1995)

(allowing amendment to answer weeks before trial when the newly asserted defense would not

surprise plaintiff); *Ricoh Co., Ltd. v. Nashua Corp.*, 947 F. Supp. 21, 25 (D.N.H. 1996) (holding

that there was no prejudice to defendant in allowing corporate plaintiff to amend complaint

*midway through trial* to add subsidiary when defendant was aware of subsidiary's significance to

lawsuit). Samsung's amendments would only address any deficiencies identified by the Court in

Samsung's existing allegations, of which SEL is well-aware, and thus would not be prejudicial.

Second, an amendment at this stage would be neither untimely nor dilatory. *See, e.g.*,

*Bower v. Jones*, 978 F.2d 1004, 1010 (7th Cir. 1992) (finding no undue delay because plaintiff

did not discover documents on which the new claim was based until late in discovery and no

prejudice because the claim was similar to those in original complaint). In this case, fact

discovery is still ongoing and does not close until May 7, 2010. In addition, at the time of SEL's

motion, neither party had taken a deposition, and the deadline for filing dispositive motions is

still three months away.

Because any amendments would be neither prejudicial nor untimely, to the extent the

Court finds Samsung's allegations insufficient, Samsung should be granted leave to amend its

Amended Answer.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Samsung respectfully requests that the Court deny SEL's

Motion. If this Court finds any deficiencies in Samsung's allegations, Samsung respectfully

requests leave to amend those allegations.

Dated:  October 15, 2009                    Respectfully submitted,

                                            _____/s/ Brian M. Berliner_____

                                            George A. Riley (griley@omm.com)
                                            O'MELVENY & MYERS LLP
                                            Two Embarcadero Center
                                            28th Floor
                                            San Francisco, CA 94111-3823
                                            (415) 984-8700
                                            (415) 984-8701 (Fax)

                                            Brian M. Berliner (bberliner@omm.com)
                                            Ryan A. Yagura (ryagura@omm.com)
                                            Nicholas J. Whilt (nwhilt@omm.com)
                                            O'MELVENY & MYERS LLP
                                            400 South Hope Street
                                            Los Angeles, CA 90071-2899
                                            (213) 430-6000
                                            (213) 430-6407 (Fax)

                                            Catherine M. Rottier, State Bar No. 1016342
                                            BOARDMAN, SUHR, CURRY & FIELD LLP
                                            1 South Pinckney Street, Fourth Floor
                                            Madison, Wisconsin 53701
                                            (608) 257-9521
                                            (608) 283-1709 (Fax)
                                            crottier@boardmanlawfirm.com

                                            Attorneys for Defendants and Counterclaim-
                                            Plaintiffs Samsung Electronics Co., Ltd., S-LCD
                                            Corporation, Samsung Electronics America, Inc.,
                                            Samsung Telecommunications America, LLC,
                                            and Samsung Mobile Display Co., Ltd.

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rules (L.R. 5.1) and the Court's Administrative Procedures for Electronic Filing and Service III.E(3) on October 15, 2009.

/s/ Brian M. Berliner