IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEMICONDUCTOR ENERGY LABORATORY CO., LTD., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; S-LCD CORPORATION; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC; AND SAMSUNG MOBILE DISPLAY CO., LTD., <br><br> Defendants and Counterclaim Plaintiffs. | CIVIL ACTION NO. 3:09-CV-00001-BBC <br><br> Hon. Barbara B. Crabb <br><br> Magistrate Stephen L. Crocker |

**MEMORANDUM OF LAW IN SUPPORT OF SEL'S MOTION *IN LIMINE* (NO. 7) TO EXCLUDE CERTAIN TESTIMONY OF PATENT ATTORNEY JAMES T. CARMICHAEL**

## INTRODUCTION

SEL respectfully moves *in limine*, pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence, for an Order barring patent attorney and purported expert James T. Carmichael from testifying at trial as to the following specific issues:

*First*, that SEL or any specific individual "buried" or failed to disclose to the '463 examiner litigation materials from *SEL I* or the '636 Patent held unenforceable in *SEL I*, because this Court has already held that there was no "burying" (Dkt. 170, 1/5/10 Order at 18-22);

*Second*, opinions regarding the alleged knowledge or intent of any person, including any testimony that any specific individual (or the entity SEL) intended to deceive the United States Patent and Trademark Office ("PTO"), because such speculation is inadmissible under settled law, *e.g.*, *In re Rosuvastatin Calcium Patent Litig.*, 2009 WL 4800702, at *8-9 (D. Del. Dec. 11, 2009);

*Third*, that the '463 Patent "recaptured" the unenforceable '636 Patent, because on that issue Mr. Carmichael relies exclusively on Dr. Fair's technical opinion as to the technical aspects of the two patents, and thus Mr. Carmichael's testimony will not assist the trier of fact;

*Fourth*, opinions regarding Defendants' unpleaded "Certificate of Correction" defense, which alleges that Dr. Yamazaki avoided a double-patenting rejection and thus "gained an advantage" in the '463 prosecution by filing a Request for Certificate of Correction rather than a reissue application to fix an obvious typographical error in the '636 Patent, because that defense is unpleaded and thus not properly a part of this case;

*Fifth*, opinions about the subjective thoughts of patent examiners, including (i) that the '463 examiner likely did not consider the '636 Patent submitted by SEL, and (ii) the reason why the '463 examiner withdrew his rejection over the '554 Yamazaki reference, because such evidence is inadmissible under settled law, *e.g.*, *Shuffle Master, Inc. v. MP Games LLC*, 553 F.

1

Supp. 2d 1202, 1209 (D. Nev. 2008) (barring Mr. Carmichael from testifying "regarding the likely subjective thoughts of the patent examiner"); and

*Sixth*, opinions regarding the administrative burdens faced by the PTO, the workload of patent examiners, or otherwise disparaging the PTO, because such evidence is irrelevant, *e.g.*, *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 920-21 (N.D. Iowa 2009).

## BACKGROUND

Mr. Carmichael is a patent attorney with the law firm of Miles & Stockbridge in McLean, Virginia. (Declaration of Jeffrey A. Koppy In Support of SEL's Motions *In Limine* ("Koppy Decl.") ¶ 25, Ex. 7A, Carmichael Report ¶¶ 15-16.) Before returning to private practice in 1999, Mr. Carmichael was an Associate Solicitor at the PTO and an Administrative Law Judge for the Board of Patent Appeals and Interferences. (*Id.* ¶¶ 9-11.) Mr. Carmichael has no technical degree and never worked at the PTO as a Patent Examiner. (*Id.* ¶ 2; Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. Tr. at 26:9-28:18.) Despite his lack of experience as a Patent Examiner, Defendants retained Mr. Carmichael as a purported expert on PTO "practices and procedures." (*Id.* at 18:25-19:5.)

## ARGUMENT

**I.    MR. CARMICHAEL SHOULD BE BARRED FROM OFFERING OPINIONS ON ISSUES THAT ARE NOT IN THIS CASE.**

Several of Mr. Carmichael's opinions relate to allegations that this Court has either dismissed or denied Defendants leave to assert. Thus, they are irrelevant to any issue in this case and should be excluded under Rules 401 and 402.

First, Mr. Carmichael's report contains opinions based on the theory that SEL "buried" or concealed references from the '463 examiner, even though these references were duly submitted

and listed on the face of the '463 Patent. For example, Mr. Carmichael opines in his report that Dr. Yamazaki violated his duty of candor and good faith by allegedly concealing a Revised Motion for Reconsideration and accompanying Declaration of Masakiyo Matsumura that SEL filed in *SEL I* on May 1, 1998, while the prosecution of the '463 Patent was ongoing. (Dkt. 251, Carmichael Report ¶¶ 218-32.) Mr. Carmichael should be barred from testifying as to this opinion because on January 14, 2010, the Court ***denied Defendants leave to assert*** this theory of inequitable conduct. (Dkt. 180, 1/14/10 Order at 9.)

Likewise, Mr. Carmichael opines that "Dr. Yamazaki did not call to the attention of the USPTO the existence of the litigation regarding the '636 Patent" because he "buried" the "ultimate court decisions (holding that he had committed inequitable conduct in obtaining the '636 Patent)." (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶ 231.) Mr. Carmichael should be barred from testifying as to both of these points because the Court has dismissed these allegations. (Dkt. 170, 1/5/10 Order at 18-22; *see also* Dkt. 180, 1/14/10 Order at 5 ("Therefore, one can infer that [the examiner] was aware of the litigation and the court's order in that case . . . .").)

Furthermore, in support of his opinion that SEL "gained an advantage" in the '463 prosecution by filing a Request for Certificate of Correction to fix a typographical error in the '636 Patent, Mr. Carmichael opined that SEL "buried" and "misdirected" the '463 examiner from the '636 Patent by disclosing it with litigation materials. (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report at ¶¶ 25, 266.) That opinion, however, is foreclosed by this Court's January 5, 2010 Order. In that Order, this Court dismissed Defendants' allegations that SEL "buried" the *SEL I* and *SEL II* inequitable conduct opinions in an Information Disclosure Statement and Notice of Litigation. (Dkt. 170, 1/5/10 Order at 18-22.) Significantly, ***SEL***

3

*disclosed the '636 Patent to the '463 examiner in the same submission that it disclosed the SEL I and SEL II opinions*. (Koppy Decl. ¶ 27, Ex. 7C, 10/08/03 Information Disclosure Statement and Notice of Litigation, at 9-10.) If SEL did not "bury" or "misdirect" the examiner from the *SEL I* and *SEL II* opinions in that submission, as this Court has already found, then it also did not "bury" or "misdirect" the examiner from the '636 Patent.

Accordingly, Mr. Carmichael should be barred at trial from testifying that SEL in any way buried or concealed anything from the '463 examiner, including: (1) the Motion for Reconsideration and accompanying Matsumura Declaration filed in *SEL I*, (2) the *SEL I* opinions, and (3) the '636 Patent.

## II.  MR. CARMICHAEL SHOULD BE BARRED FROM TESTIFYING ABOUT SEL'S KNOWLEDGE OR INTENT.

To prove inequitable conduct, Defendants must prove by clear and convincing evidence that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a ***specific intent to deceive the PTO***." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (emphasis added); *see also* Dkt. 170, 1/5/10 Order at 16-17.

Despite the fact that Mr. Carmichael has no personal knowledge of the underlying facts of this case or of SEL, he offered several opinions in his expert report suggesting that SEL intended to deceive the PTO, including speculation about Dr. Yamazaki's knowledge and intent. For example, Mr. Carmichael opines:

- "Pending any explanation that Dr. Yamazaki offers at his deposition for these inconsistencies, there is evidence that his failure to disclose the '974 Patent to the USPTO during prosecution of the '463 Patent *was done deliberately and with knowledge of its materiality*. First, Dr. Yamazaki and his company disclosed the '974 Patent to the USPTO in at least nine other SEL patents that issued before the date of the '463 Patent was filed . . . . Second, Dr. Yamazaki was also a named inventor on each of those prior patents. [footnote omitted] Finally, the '974 Patent was also brought to the attention of Dr. Yamazaki and SEL during prosecution of the '132 Patent, on which Dr. Yamazaki is also a named inventor. . . ." (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶ 237 (emphasis added).)

- "Dr. Yamazaki *knew* of the relationship between the claims in the '463 and '636 Patents at the time he was prosecuting the '463 Patent. . . ." (*Id.* ¶ 249 (emphasis added).)

- "Dr. Yamazaki *knew* that the '463 Patent could have obviousness-type double patenting problems. . . ." (*Id.* ¶ 260 (emphasis added).)

- "Dr. Yamazaki further *ensured that* the examiner of the '463 Patent would not be alerted to the double-patenting issue with the '636 Patent by burying the '636 Patent in a huge volume of materials dumped on the '463 examiner." (*Id.* ¶ 263.)

- "Dr. Yamazaki *clearly knew* how to highlight documents selected from a long IDS list . . . ." (*Id.* ¶ 265 (emphasis added).)

- "Dr. Yamazaki, through his attorney Mr. Robinson, *specifically misdirected* the attention of the '463 examiner away from material aspects (e.g. double patenting) of the '636 Patent . . . ." (*Id.* ¶ 266 (emphasis added).)

These "opinions" simply parrot the wording of Defendants' attorneys' counterclaim pleading and briefing in this matter. As such, Mr. Carmichael's "opinions" with respect to Dr. Yamazaki's supposed "intent" or what he supposedly "knew" are nothing more than attorney argument and plainly are improper. It is settled law that an expert cannot testify about a party's state of mind or intent. *E.g.*, *Schindler v. Marshfield Clinic*, 2007 WL 5614081, at *1 (W.D. Wis. April 23, 2007) (Crabb, J.) (granting motion to exclude expert testimony on the "subjective intent or motives of members of the Professional Review Committee. . . . The expert witnesses have no foundation on which to offer such testimony"); *In re Rosuvastatin Calcium Patent Litig.*,

2009 WL 4800702, at *8-9 (granting motion to exclude expert testimony about patentee's state of mind, explaining that "[g]enerally, expert witnesses are not permitted to testify regarding 'intent, motive, or state of mind, or evidence by which such state of mind may be inferred'") (quoting *Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004)), *adopted by* 2010 WL 661599, at *3 (D. Del. Feb. 19, 2010); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (excluding expert testimony on state of mind because "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony").

That is equally true in patent cases, where courts routinely bar "PTO practices and procedures" experts from testifying about the patentee's knowledge or intent. *E.g.*, *In re Rosuvastatin*, 2009 WL 4800702, at *8-9 (excluding expert testimony about patentee's intent); *Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 4545087, at *2 (E.D. Tex. Nov. 19, 2009) (barring expert from testifying as to "intent and credibility" of prosecuting attorney for patent-in-suit); *Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, 2009 WL 3754170, at *7-8 (D.N.J. Nov. 5, 2009) (excluding expert testimony about "the mental states of the patentees" and "the intent of such parties in presenting these applications"); *Se-Kure Controls, Inc. v. Diam USA, Inc.*, 2009 WL 77463, at *2 (N.D. Ill. Jan. 9, 2009) ("[Defendant's PTO expert] also is not a mind-reader. He may not testify that he knows Se-Kure's intent to hide certain information nor may he testify that he knows Se-Kure lied about certain information."); *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, 2003 WL 25695241, at *1 (N.D. Ohio Feb. 18, 2003) ("Defendants also may not present testimony by Mr. Fagan about Plaintiffs' intent in prosecuting the patents-in-suit. The question of intent is one for the court to decide; it is therefore not a subject suitable for expert testimony." (internal citations omitted)).

The Court should do the same here. It should bar Mr. Carmichael from testifying about SEL's or any individual's knowledge or intent, including any testimony that SEL or any individual intended to deceive the PTO.

### III. THE COURT SHOULD BAR MR. CARMICHAEL FROM TESTIFYING THAT SEL "RECAPTURED" THE '636 PATENT IN THE '463 PATENT.

Mr. Carmichael has also opined, in support of Defendants' "infectious unenforceability" claim, that there is a "necessary and immediate relationship" between the '463 Patent and the inequitable conduct in the '636 Patent because SEL purportedly "recaptured" the unenforceable '636 Patent in the '463 Patent. (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶¶ 242-49.) Mr. Carmichael should be barred from offering this opinion for two reasons:

*First*, Mr. Carmichael admitted at his deposition that the PTO has never applied the "recapturing" concept about which he opined and there is no PTO rule or test articulating it. (Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. at 137:8-15.) (There is a PTO concept called "recapturing" applicable to reissue proceedings, *see* MPEP § 1412.02, but as Mr. Carmichael testified, "that's an entirely different inquiry" than the inquiry described in his expert report, *see* Koppy Decl. ¶ 25, Ex. 7A, Carmichael Dep. at 136:23-137:7.) Rather, Mr. Carmichael's opinion that SEL "recaptured" the '636 Patent is based exclusively on Defendants' technical expert's (Dr. Fair's) opinion that the '463 and '636 Patents contain "the same subject matter" and "substantially similar claims," and are "patentably indistinct." (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶¶ 243-44.)

Although SEL contends that Dr. Fair is wrong, the important point for purposes of this motion is that Mr. Carmichael's "recapturing" opinion is based *exclusively* on Dr. Fair's technical opinions. Indeed, Mr. Carmichael testified at his deposition that he has no independent opinions whether the '463 and '636 Patents contain similar subject matter or claims, or are

7

patentably indistinct, and that if Dr. Fair is wrong on these issues, he would have to "seriously reconsider" his "recapturing" opinion. (Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. Tr. at 131:1-134:18.) Because Mr. Carmichael's "recapturing" opinion is based exclusively on Dr. Fair's opinion, Mr. Carmichael's opinion on that issue will not assist the trier of fact. Therefore, this Court should enter an Order barring Mr. Carmichael from testifying as to whether or not SEL "recaptured" the '636 Patent. There is no PTO rule or practice on this issue and Mr. Carmichael does not have the technical qualifications to opine on it.

***Second***, Mr. Carmichael testified at his deposition that "recapturing" is "an equitable decision to be made by the judge":

> Q.  [] Anything else that has to be present for recapturing to occur?
>
> A.  You know, I think generally that's probably ***an equitable decision to be made by the judge*** in light of all of the facts and circumstances . . . .

(Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. at 135:7-11 (emphasis added).) It is settled that experts cannot offer opinions on ultimate legal issues. *E.g.*, *Scottsdale Ins. Co. v. City of Waukegan*, 2010 WL 502742, at *2, 7 (N.D. Ill. Feb. 9, 2010) (barring expert from testifying as to legal conclusions, reasoning that experts "may not testify as to legal conclusions that will determine the outcome of the case"); *Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, 2007 WL 4747940, at *1 (E.D. Wis. Apr. 27, 2007) ("[T]o the extent Manbeck [the expert] would attempt to testify about ultimate legal issues, I would exclude or disregard that testimony. If he were to testify, for example, that 'in my expert opinion, Mr. Parsons committed inequitable conduct,' I would disregard such testimony.").

### IV. MR. CARMICHAEL SHOULD BE BARRED FROM TESTIFYING REGARDING DEFENDANTS' UNPLEADED "CERTIFICATE OF CORRECTION" DEFENSE.

Mr. Carmichael also opines that there is a "necessary and immediate relationship" between the '463 Patent and the inequitable conduct in the '636 Patent based on a Request for Certificate of Correction that SEL filed on September 27, 1996, after the '636 Patent issued, to fix a typographical error in that patent. (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶¶ 241, 250-90.) Mr. Carmichael opines that by filing that Request for Certificate of Correction, rather than a reissue application, Dr. Yamazaki avoided a double-patenting rejection over the '636 Patent and thus "gained an advantage" in the '463 prosecution. (*Id.* at p. 104 & ¶ 259.)

Mr. Carmichael's opinion on this issue is the subject of SEL's pending Motion to Bar Evidence Related to Unpleaded Inequitable Conduct Allegations. (Dkt. 345, 346, 366.) As demonstrated in that motion, Mr. Carmichael's opinion that Dr. Yamazaki "gained an advantage" in the '463 prosecution by filing the Request for Certificate of Correction to correct the '636 Patent has never been pled in any of Defendants' pleadings, as required by *Exergen*, and therefore not properly a part of this case. (Dkt. 346, Mem. in Support of SEL's Mot. to Bar Evidence Related to Unpleaded Inequitable Conduct Allegations at 5-6.) Accordingly, the Court should grant SEL's pending motion and bar Mr. Carmichael from offering at trial an opinion, in support of Defendants' unpleaded defense, that SEL avoided a double-patenting rejection and thus "gained an advantage" in the '463 prosecution by filing the Request for Certificate of Correction to fix the '636 Patent.

### V. THE COURT SHOULD BAR MR. CARMICHAEL FROM SPECULATING ABOUT THE SUBJECTIVE THOUGHTS OF PATENT EXAMINERS.

The Court also should bar Mr. Carmichael from speculating at trial about the subjective thoughts of patent examiners or the PTO, including offering opinions that the '463 examiner (i) did not consider the '636 Patent during the '463 prosecution, and (ii) withdrew a rejection

over the Yamazaki '554 reference because SEL had perfected priority back to the '609 application. Defendants and Mr. Carmichael should know that such testimony is inadmissible – a district court recently barred Mr. Carmichael from offering the same testimony. *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1209 (D. Nev. 2008) ("Carmichael's opinion regarding the likely subjective thoughts of the patent examiner in light of PTO procedures is irrelevant."); *see also Anagram Intern., Inc. v. Mayflower Distributing Co.*, 2008 WL 5500764, at *1 (D. Minn. Aug. 21, 2008) ("The Court will not permit Mr. Jackson to testify as to the likelihood that a reasonable patent examiner would consider the information . . . significant or important."); *Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 2004 WL 5614917, at *3 (D.N.J. Feb. 18, 2004) (barring expert from testifying about "how 'a reasonable patent examiner' would have acted").

*First*, Mr. Carmichael should be barred from testifying that the '463 examiner did not consider the '636 Patent when SEL submitted it because it was submitted in an Information Disclosure Statement and Notice of Litigation. Mr. Carmichael opined in his expert report:

> In my experience in working with examiners and in examining applications as an Examiner-in-Chief, ***there is very little chance that the examiner would even look at the '636 claims in response to such a submission*** because examiners do not examine patent applications for possible inequitable conduct. ***The examiner would not have been prompted to consider the '636 Patent*** at all in response to Dr. Yamazaki's statement of its relevance ('merely . . . . as a result of the contentions of the parties in the referenced litigation').") (emphasis added).

(Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶ 267.)

Mr. Carmichael has no idea what the '463 examiner considered or did not consider. Because the law prohibits the parties from calling the examiner as a witness, Mr. Carmichael should not be permitted to speculate as to what the examiner did. Not only is this opinion speculative, but Mr. Carmichael's opinion that the '463 examiner did not consider the '636

Patent is belied by the fact that the '463 examiner marked his initials next to the '636 Patent on SEL's IDS (Koppy Decl. ¶ 27, Ex. 7C, 10/08/03 Information Disclosure Statement and Notice of Litigation, at 9-10), indicating that he considered it. MPEP § 609.05(b).

*Second*, Mr. Carmichael should be barred from testifying in support of Defendants' "forgery" claim that the '463 examiner withdrew his rejection over the '554 Yamazaki reference because SEL perfected priority back to the '609 application. (Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. Tr. at 102:11-105:6, 106:3-12.) Again, Mr. Carmichael's opinion is pure speculation as to the subjective intent of the '463 examiner. That opinion also is belied by the facts. On May 9, 1994, after the '463 examiner withdrew the rejection over the '554 Yamazaki reference, the examiner rejected the pending claims over the Matsuda reference and *informed SEL that it could overcome that rejection by perfecting priority back to the '609 application*. (Koppy Decl. ¶ 34, Ex. 7D, May 9, 1994 Office Action in the '463 Prosecution History, at p. 2.) If SEL had perfected priority back to the '609 application in October 1993 when the '463 examiner withdrew the rejection over the '554 Yamazaki reference (Koppy Decl. ¶ 26, Ex. 7B, Carmichael Dep. Tr. at 111:11-18), or if the examiner believed that SEL had done so, the examiner never would have rejected the pending claims over Matsuda in 1994 and never would have told SEL in *1994* to perfect priority (again) back to the '609. Therefore, the only reasonable inference based on these facts is that the '463 examiner withdrew the '554 Yamazaki rejection in 1993 for some reason other than thinking that SEL had perfected priority back to the '609 application.

## VI. THE COURT SHOULD BAR MR. CARMICHAEL FROM TESTIFYING ABOUT PTO BURDENS.

Finally, the Court should bar Mr. Carmichael from testifying about administrative burdens faced by the PTO, the workload of patent examiners, or otherwise disparaging the PTO.

Such testimony is irrelevant and would serve only to undermine the presumption of validity that attaches to the patents-in-suit. 35 U.S.C. § 282; *see also, e.g.*, *Gen. Elec. Co. v. SonoSite, Inc.*, 641 F. Supp. 2d 793, 810 (W.D. Wis. 2009) (Crabb, J.).

SEL has filed a separate motion *in limine* to preclude Defendants from offering such evidence and argument to the jury, but reasserts it here because Mr. Carmichael's opinion on these issues (Koppy Decl. ¶ 25, Ex. 7A, Carmichael Report ¶ 32) is irrelevant under Rules 401 and 402 to any issue in this case and should excluded on that basis, even in the bench phase of the trial. *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 920-21 (N.D. Iowa 2009) (granting motion in limine to exclude testimony about alleged inadequacy of PTO to examine business method patents); *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 544 (S.D. Tex. 2006) (finding inadmissible testimony addressing the "potential pressures and potential for error at the PTO. . . . Such general testimony tends to undermine the presumption of validity."); *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, 2003 WL 25695241, at *1 (N.D. Ohio Feb. 18, 2003) (finding inadmissible testimony "about the relative shortage of patent examiners at the PTO"); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255-56 (W.D.N.Y. 2000) (excluding evidence about the time constraints faced by PTO examiners and difficulties discovering and obtaining prior art); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995) ("Testimony about overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue annually or insinuating that the Patent Office does not do its job properly is excluded. Such evidence would be ***irrelevant speculation*** and would constitute an inappropriate attack on the Patent Office.") (emphasis added).

## CONCLUSION

For these reasons, the Court should grant this motion and bar Mr. Carmichael from offering the opinions and testifying about the issues discussed herein.

Dated: May 10, 2010　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 */s/ Terrence J. Truax*
　　　　　　　　　　　　　　　　　　　　　　Donald R. Harris (dharris@jenner.com)
　　　　　　　　　　　　　　　　　　　　　　Terrence J. Truax (ttruax@jenner.com)
　　　　　　　　　　　　　　　　　　　　　　Steven R. Trybus (strybus@jenner.com)
　　　　　　　　　　　　　　　　　　　　　　Jeffrey A. Koppy (jkoppy@jenner.com)
　　　　　　　　　　　　　　　　　　　　　　JENNER & BLOCK, LLP
　　　　　　　　　　　　　　　　　　　　　　353 North Clark Street
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654-3456
　　　　　　　　　　　　　　　　　　　　　　Telephone: 312-222-9350

　　　　　　　　　　　　　　　　　　　　　　Anthony A. Tomaselli
　　　　　　　　　　　　　　　　　　　　　　(anthony.tomaselli@quarles.com)
　　　　　　　　　　　　　　　　　　　　　　Kristin Graham Noel
　　　　　　　　　　　　　　　　　　　　　　(kristin.noel@quarles.com)
　　　　　　　　　　　　　　　　　　　　　　QUARLES and BRADY LLP
　　　　　　　　　　　　　　　　　　　　　　33 East Main Street
　　　　　　　　　　　　　　　　　　　　　　Suite 900
　　　　　　　　　　　　　　　　　　　　　　Madison, Wisconsin 53703
　　　　　　　　　　　　　　　　　　　　　　Telephone: 608-283-2615

　　　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　　　　　　　　SEMICONDUCTOR ENERGY
　　　　　　　　　　　　　　　　　　　　　　LABORATORY CO., LTD.